

**RB**

# IN THE UNITED STATES DISTRICT COURT EASTERN DISTRICT OF PENNSYLVANIA

**DAVID J. NUYANNES**, Individually, 1435
Kynlyn Drive, Wilmington DE, 19809       :
                                         :       CIVIL ACTION
Plaintiff,                               :
                                         :
                                         :
               v.                        :
                                         :
**NICHOLE MARIE THOMPSON**,              :       NO.     
Esquire, and **NICHOLE MARIE**           :
**THOMPSON**, individual, PO BOX 1644,   :
Media, PA 19063                          :
                                         :
**EUGENE J. MALADY**, Esquire, and       :
**EUGENE J. MALADY**, individual, 211-   :
213 North Olive Street, Media, PA 19063  :
                                         :
                                         :       JURY TRIAL DEMANDED
**SCOTT D. GALLOWAY**, Esquire, and      :
**SCOTT D. GALLOWAY**, individual, 1215  :
West Baltimore Pike, Suite 14, Media PA, :
19063                                    :
                                         :
Defendants                               :
                                         :
                                         :
                                         :
                                         :

## NATURE OF THE ACTION

1. Plaintiff, David Jay Nuyannes, brings this action on behalf of himself, and seeks to recover damages caused to the Plaintiff by Defendants' malpractice, perjury, false declarations before grand jury or court, conspiracy, civil action for deprivation of rights, extortion and unlawful use of civil procedure during and after their representation of David Jay Nuyannes and his Wife in their divorce, support and custody matters pursuant to the Pennsylvania Professional Rules of Professional Conduct, Title 42 U.S.C § 1985 Conspiracy to interfere with civil rights (3) Depriving persons of rights or privileges, Title 18 U.S.C. § 1621 Perjury generally, Title 18 U.S.C. § 1622 Subornation of perjury, Title 18 U.S.C. § 1623 False declarations before grand jury or court and Title 18 U.S.C. § 876  Mailing threatening communications, Title 42 U.S.C. § 1983 Civil action for deprivation of rights, Title 42 U.S.C. § 1986 Conspiracy to interfere with civil rights, and Title 42 U.S.C. § 1981 Equal rights under the law.

## JURISDICTION

2. This Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332, to hear this Complaint and to adjudicate the claims stated herein because this action asserts rights arising under federal law (See FLSA, 29 U.S.C. § 201, et seq.), none of the Defendants is a citizen of the same state as the Plaintiff, and the amount in controversy exceeds $75,000.

3. Additionally, this court has Supplemental and Pendent Jurisdiction pursuant to 28 U.S.C. § 1367(a).

# VENUE

4. Venue is proper in the United States District Court, Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391, because Defendants reside in this District and because a substantial portion of the events or omissions giving rise to the claims occurred in this District.

# THE PARTIES

5. Plaintiff, David J. Nuyannes is the parent and natural guardian of Nicole Elyse Nuyannes and Joseph Ryan Nuyannes and resided at 807 East Daffodil Lane, Media, PA with the two children and their Mother up until the divorce action started in September 2008 and now lives at 1435 Kynlyn Drive, Wilmington DE, 19809.

6. Defendant, Nichole Marie Thompson, Esquire, represented David J. Nuyannes in the divorce, custody and support matters from December 20, 2008 until February 23, 2009 with a business address of P.O. Box 1644, Media, PA 19063.

7. Defendant, Scott D. Galloway, Esquire, represented David J. Nuyannes in the divorce, custody and support matters from March 3, 2009 until March 25, 2009 with a principle place of business at 1215 West Baltimore Pike, Suite 14, Media PA, 19063.

8. Defendant, Eugene J. Malady, Esquire, represented Louise M. King, David J. Nuyannes' wife in the divorce, custody and support matters from September 25, 2008 until March 13, 2009 with a principle place of business at 211-213 North Olive Street, Media, PA 19063.

# SUBSTANTATIVE ALLEGATIONS

9. The Defendants individually and/or collectively violated the following Pennsylvania Professional Rules of Professional Conduct: Rule 1.1 Competence, Rule 1.2 Scope of Representation and Allocation of Authority Between Client and Lawyer, Rule 1.3 Diligence, Rule 1.4 Communication, Rule 1.6 Confidentiality of Information, Rule 1.7

Conflict of Interest: Current Clients, Rule 1.8 Conflict of Interest: Current Clients: Specific Rules, Rule 1.9 Duties to Former Clients, Rule 1.16 Declining or Terminating Representation, Rule 3.1 Meritorious Claims and Contentions, Rule 3.2 Expediting Litigation, Rule 3.3 Candor Toward the Tribunal, Rule 3.4 Fairness to Opposing Party and Counsel, Rule 3.5 Impartiality and Decorum of the Tribunal, Rule 4.1 Truthfulness in Statements to Others, Rule 4.4 Respect for Rights of Third Persons, Rule 5.1 Responsibilities of Partners, Managers and Supervisory Lawyers, Rule 5.2 Responsibilities of a Subordinate, Rule 5.3 Responsibilities Regarding Non-lawyer Assistants, Rule 8.3 Reporting Professional Misconduct and Rule 8.4 Misconduct, Title 42 U.S.C § 1985 Conspiracy to interfere with civil rights (3) Depriving persons of rights or privileges, Title 18 U.S.C. § 1621 Perjury generally, Title 18 U.S.C. § 1622 Subornation of perjury, Title 18 U.S.C. § 1623 False declarations before grand jury or court, Title 18 U.S.C. § 876 Mailing threatening communications, Title 42 U.S.C. § 1983 Civil action for deprivation of rights, Title 42 U.S.C. § 1986 Conspiracy to interfere with civil rights and Title 42 U.S.C. § 1981 Equal rights under the law.

10. Plaintiff David J. Nuyannes retained Nichole M. Thompson, Esquire on December 20, 2008.

11. Defendant Thompson filed a *Response to Petition for Special Relief to Enforce Terms of Non-dissipation Order* time stamped December 22, 2008 at 8:44 am. The response defends Plaintiff Father's position and asks for contempt charges to be brought against wife of Plaintiff Father.

12. Prior to the hearing, Defendant Thompson had a private discussion with opposing counsel. After this discussion, Defendant Thompson told Plaintiff Father, "You cannot file contempt charges against your wife because she already filed them against you," and looking scared, "you have to agree to pay her $10,000 or the Judge is going to throw the book at you."

13. Defendant Malady reworded the September 25, 2008 agreement which was later reduced to an order in his motion for Special Relief filed in December where he claimed Plaintiff Father was to withdraw $10,000 from his account to pay wife. Item number six of the September 25, 2008 agreement stated "That the Charles Schwab, Wells Fargo 401K and any other accounts owned by the parties are frozen pending final equitable distribution

except for $10,000 that each party will withdraw." Husband and wife never had a joint banking account. Defendant Malady also writes in his letter to the Judge on December 24, 2008, "That wife is going to receive $10,000 from the IRA account pursuant to the terms of a prior Stipulation and Order." There never was a Stipulation or Order stating such.

14. Defendant Malady made several attempts to extort funds from Plaintiff Father. Defendant Malady's client, Louise King, was not paying him and he eventually filed a civil suit against his own client for not paying his fees. Since his own client was not paying him, Defendant Malady tried to get the money from Plaintiff Father. To achieve this goal, Defendant Malady reworded court orders, made false claims, omitted pertinent information at court hearings, threatened to incarcerate Plaintiff Father and threatened to separate Plaintiff Daughter and Plaintiff Son from their father if Plaintiff Father did not pay him or put funds into an escrow account from which Defendant Malady could withdraw.

15. In order to motivate Plaintiff Father's wife to comply with the September 25, 2008 agreement, Plaintiff Father said he would agree to pay her $10,000 out of his account only if she agreed to immediately comply with the previous agreement on September 25, 2008 where wife was to (1) sell the house, (2) allow Plaintiff Father to get his things out of the house and (3) sign the 3301c. Defendant Thompson told Plaintiff Father she would "get the 3301c form from downstairs so you can both sign it today before we leave."

16. After the December 22, 2008 hearing, Defendant Thompson sent a letter to opposing counsel to reiterate the agreement placed on the record.

17. On December 23, 2008, Defendant Thompson sent another letter to opposing counsel in response to his letter she received that day. Defendant Thompson states in pertinent part "I cannot agree to the terms laid out in your letter, as they were not the terms we placed on the record. I cannot and will not agree to any dollar amount, other than the most recent statements for the Wells Fargo account balance to confirm your statements."

18. On December 24, 2008, opposing counsel Defendant Malady sent a letter to the Judge memorializing the agreement after ignoring Defendant Thompson's objections in her December 23, 2008 letter. Details of the agreement were not as agreed upon by the parties or their counsel. Defendant Malady added things that were not agreed upon during

the December 22, 2008 hearing to prejudice the Judge, favor his client, and harm Plaintiff Father.

19. Defendant Thompson did not inform the judge that opposing counsel reworded the September 25, 2008 agreement which stipulated that each party would withdraw $10,000 from the marital accounts, instead stating that both withdrawals were to come out of Plaintiff Father' 401-k.

20. On February 17, 2009, opposing counsel claims he did not get the fax, of Defendant Thompson's letter in which she informs him that his version of the agreement was not agreed upon, until after sending the letter to the Judge.

21. On December 25, 2008, Defendant Thompson told a third party in a negative tone, "there's more to Dave then you know." Rule 8.4 of the Rules of Professional Conduct states, "Offenses involving...dishonesty, breach of trust...are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation."

22. During the initial custody hearing on November 2, 2008, in order to prove that he was not on drugs as Plaintiff Father' wife's attorney was claiming, Plaintiff Father agreed to take a drug test, which was then written into the temporary custody order.

23. After the hearing on November 2, 2008, his lawyer said he had to be tested "downstairs." Plaintiff Father immediately asked if he could take him to the testing location but the lawyer said he was too busy.

24. In November 2008, Plaintiff Father searched the Internet to find a drug testing facility. Plaintiff Father went to Lab Corp in Springfield, Pennsylvania but was turned away. They did not take walk-ins and worked exclusively with corporations. They did not have the means to accept any payment.

25. On or about January 5, 2009, Plaintiff Father contacted Adult Probation in the Delaware County Courthouse to inquire about taking the drug test. The next day, Plaintiff Father received a return call from Adult Probation and they stated they did not have a court order requesting that he take a drug test. They did state that he had a support hearing scheduled later that week on January 8, 2009, of which he was unaware. Later that day, Plaintiff Father arrived at Adult Probation inquiring about the test. The employee told

him to leave. Plaintiff Father asked for her supervisor. The supervisor refused to give him the test.

26. On or about January 6, 2009, Plaintiff Father contacted Defendant Thompson, and informed her of the conversation with Adult Probation and their claim that a support hearing was scheduled later that week. Defendant Thompson claimed she was not aware of the support hearing.

27. On January 7, 2009, Defendant Thompson sent a letter to opposing counsel explaining Plaintiff Father' contact with Adult Probation and said in pertinent part, "I will accompany Mr. Nuyannes after tomorrow's hearing to have the test completed. I will also provide that office with the original Order which I have in my file. Hopefully, they will perform the test as requested."

28. After learning about the January 8, 2009 support hearing scheduled for that week, Defendant Thompson told Plaintiff Father, 'we'll show up and tell the Master we're here on a good faith effort, inform the Master that we just learned about the hearing, and ask for a continuance.' (paraphrased) However, Defendant Thompson never said this during the hearing.

29. Defendant Thompson was completely unprepared for the hearing, made virtually no argument, and did not inform the Master of having just learned about the hearing even when opposing counsel attacked us for being unprepared.

30. As a result, Plaintiff Father was left to fend for himself. Without knowing any of the support rules or guidelines, he was unaware that they were not being followed. Plaintiff Father just knew he was being charged more than he earned.

31. Defendant Thompson was fully aware that Plaintiff Father was being charged 105% of his income for child support of the two children and that his wife was lying about her income of $100 per week. Plaintiff Father's Wife has worked at her family's restaurant one block from the courthouse for the past 25 years. She waitresses and manages the restaurant but gets compensated in cash.

32. Defendant Thompson made no argument to reduce the child support. She did not argue that the rules and guidelines were not being followed when the original calculation was made; she did not argue that the "Self Support Reserve" rule was not being followed; she did not challenge wife's income; and she did not ask for discovery.

33. Plaintiff Father suspected at this point that Defendant Thompson knew very little if anything about family law, or worse, she was deliberately not advocating for him.

34. Following the hearing, Defendant Thompson said she was too busy to take Plaintiff Father to Adult Probation to take the drug test even though she had promised to do so in her January 7, 2009 letter to opposing counsel.

35. After observing Defendant Thompson's performance over the previous three weeks, and noting an obvious change in her demeanor after the private conversation with opposing counsel on December 22, 2008, Plaintiff Father was upset with her performance and decided to set up a meeting. Plaintiff Father invited Elaine Bassill, Defendant Thompson's cousin who had referred Defendant Thompson. Plaintiff Father wanted Bassill's opinion of Defendant Thompson's answers to his questions.

36. During the January 15, 2009 meeting, Defendant Thompson made several disturbing statements:

    a. "I don't like doing divorce… it's all he said she said." Comparing it to defense work, Defendant Thompson explained, "you either did it, or you didn't."

    b. Laughing, she said, "If you kill Louise, I'll be happy to represent you." Louise is Plaintiff Father's estranged wife.

    c. "You haven't seen your kids in four months, it's not like it's been four **years!**"

    d. This one is paraphrased, "If you want to withdraw the divorce and custody complaints, then I will withdraw from the case."

37. During the January 15, 2009 meeting Plaintiff Father asked Defendant Thompson to file a continuance of the February 23, 2009 hearing because he would be unavailable.

38. After hearing her comments, it was obvious that she did not want to be involved in this case, and Plaintiff Father certainly did not want her representing him anymore. It was agreed she would no longer represent him after she filed the praecipe to withdraw the complaints in divorce and custody.

39. Defendant Thompson failed to file a continuance of the February 23, 2009 hearing until five weeks later. In the meantime other matters were scheduled for or moved to February 23, 2009 because opposing counsel knew Plaintiff Father could not attend.

40. On January 29, 2009, opposing counsel filed an Emergency Petition for Special Relief to Hold Plaintiff in Contempt Filed. Defendant Thompson did not file a response on her client's behalf.

41. At the February 23, 2009 divorce proceeding, the trial Judge sua sponte terminated Plaintiff Father custody rights. Defendant Thompson did not object even though it was not a custody hearing. On page eleven (11) the Judge states, "I've also added paragraph number five, which is Plaintiff's custody rights are terminated pending further order of the Court."

42. The judge relieved Defendant Thompson as Plaintiff Father's counsel with the stipulation that she inform Plaintiff Father of the February 23, 2009 proceeding and send him the resulting order.

43. Defendant Thompson sent an email the following day, February 24, 2009, telling Plaintiff Father what took place at the hearing. Amongst other errors in the email, **Defendant Thompson omitted the part that Plaintiff Father's custody rights were terminated**.

44. The February 23, 2009 contempt order was never served. On page twelve (12) of the transcript, opposing counsel states, "I would like service to be effective upon mailing by regular mail, notice to that PO Box of any future hearings or any notices." The Court replied "Okay, I'll grant that." Both wife and Defendant Thompson confirmed the incorrect address on page thirteen (13). On page eleven (11) the court directs the following statement to Defendant Thompson, "Counsel, I'm going to ask you to pass along this Order to your client and at that point your obligations of counsel are finished as you will then be granted the Right to Withdraw." Defendant Thompson replied, "Thank you, Your Honor." On page thirteen the Court states, "Okay. We'll send copies of the Order." Either the Court nor Defendant Thompson sent the order, or they sent it to the incorrect address. Plaintiff Father did not receive the order. Plaintiff Father only had Defendant Thompson's email which omitted the part about his custody rights being terminated.

45. Plaintiff Father was also found in contempt for "his willful violation to comply with his agreements on the record of September 25, 2008 and December 22, 2008." One cannot be found in contempt of an agreement, especially when the agreement is not clear and not yet agreed upon. There was no court order for Plaintiff Father to willfully violate and

Defendant Thompson should have objected the non-existent order. Defendant Thompson did not object or argue against anything.

46. Defendant Thompson and Defendant Malady failed to mention or object to the fact that the agreements were not clear. Defendant Thompson and Defendant Malady failed to disclose Defendant Thompson's letters to opposing counsel stating she disagreed with opposing counsel's interpretation of the December 22, 2008 agreement. Defendant Thompson and Defendant Malady also failed to mention the fact that Defendant Malady sent a letter to Defendant Thompson on February 17, 2009 which was admitting that he had not seen her faxed letter on the fax machine until after the holidays, after he had sent his letter to the Judge.

47. The four elements of contempt were not met in this case. As set forth in Weingrad v. Lippy, 300 Pa.Super. 76, 79,445 A.2d 1306, 1308 (1982), four elements are necessary to support a finding of contempt under section 4131(2): The Trial Judge did not take into account the four elements of contempt.

    e. *One*, the order must be definite, clear, and specific.   There was no order and the agreement was not definite, clear or specific.

    f. *Two*, the contemnor must have had notice of the specific order.  Again, there was no order of which to be in contempt.

    g. *Three*, the act constituting the violation must have been volitional. ***Plaintiff Father did not act with volition.***

    h. *Four*, the contemnor must have acted with wrongful intent. ***Plaintiff Father did not act with wrongful intent.*** Furthermore, there is not a scintilla of evidence Plaintiff Father acted with wrongful intent in this matter.

48. Defendant Thompson should have argued that the four elements of contempt were not met in this case. She did not.

49. On page nine (9) of the transcript Defendant Thompson states: "As for the Special Relief Hearing that was held December 22, there was an Order signed that the accounts were to be frozen." Defendant Thompson erred when she made that statement as **no Court Order exists** from the December 22, 2008 hearing. It appears Defendant Thompson was testifying for the opposition instead of advocating for her client, Plaintiff Father.

50. The following week when Plaintiff Father returned from his vacation, he took his daughter to Friendly's to celebrate her 15th birthday on March 3, 2009. Plaintiff Father bought her ice cream and gave her presents. A felony arrest warrant was issued by the Pennsylvania State Police on March 5, 2009 for "Interference with the Custody of a Child."

51. Plaintiff Father was subsequently arrested and incarcerated by Defendant Thompson's boyfriend and former fiancé, a detective in the Pennsylvania State Police Troop K, with bail set at $50,000 cash. The arrest made in a lawyer's office via a sting operation was scheduled on Defendant Thompson's birthday, July 13, apparently a birthday present from her boyfriend.

52. Regarding the February 23, 2009 order of 180 days incarceration, Defendant Thompson told Elaine Bassill in a conversation in May 2009, "They were just trying to scare him. They do not intend to incarcerate him."

53. Defendant Thompson breached attorney client privilege by discussing the case with her boyfriend from the Pennsylvania State Police. The Police report under "INTERVIEWS" shows where her State Trooper boyfriend interviews "Nichole Marie Thompson."

54. Defendant Thompson refused to turn over the file to Plaintiff Father's new lawyer. A letter from the new lawyer, Lauren Kane to Defendant Thompson threatens to notify the Disciplinary Board if Defendant Thompson did not turn over the file. Furthermore, Defendant Thompson's email to Plaintiff Father on March 13, 2009 states, "I will provide you with the documents you requested upon receipt of the outstanding balance of my fees in full. I am out of the office today. Upon my return I will forward you a copy of your final bill."

55. A sole practitioner, Defendant Thompson never disclosed that she did not carry liability insurance even though on the Pennsylvania Bar website Defendant Thompson states that she will inform her clients of this per the *Rules of Professional Conduct, Rule 1.4 Communication (c)* A lawyer in private practice shall inform a new client in writing if the lawyer does not have professional liability insurance of at least $100,000 per occurrence and $300,000 in the aggregate per year, subject to commercially reasonable deductibles, retention or co-insurance, and shall inform existing clients in writing at any time the lawyer's professional liability insurance drops below either of those amounts or the

lawyer's professional liability insurance is terminated. A lawyer shall maintain a record of these disclosures for six years after the termination of the representation of a client.

56. The final bill, the first bill Plaintiff Father ever received, was sent to him attached to an email from Defendant Thompson on May 4, 2009.

57. Defendant Thompson lied on her bill and fraudulently charged for a conversation on February 22, 2009 that could never have taken place because Plaintiff Father was on a ship at sea.

58. The *Rules of Professional Conduct* state in *Rule 8.3 Reporting Professional Misconduct (b)* A lawyer who knows that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority. Plaintiff Father avers that neither Defendant Thompson, Defendant Malady nor Defendant Galloway reported the judge for sua sponte terminating his parental rights sua sponte at the ex-parte divorce proceeding.

59. As illustrated herein, Defendant Thompson misrepresented that she was both capable and willing to represent Plaintiff Father in a contemptuous divorce case in which his wife is extremely well connected in the Delaware County legal arena. *Rule 1.1 Competence* in the *Rules of Professional Conduct* state: A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

    i. This point is further clarified in the Comment, *Thoroughness and Preparation* which states "[5] Competent handling of particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation. The required attention and preparation are determined in part by what is at stake…" On February 23, 2009, Plaintiff Father's relationship with his children and his very freedom were at stake, but Defendant Thompson did nothing to prepare for his defense, nor did she make any effort to defend him.

60. As a result of Defendant Thompson's, Defendant Galloway's and Defendant Malady's incompetent representation and unethical, illegal acts, Plaintiff Father spent six months in prison, his accounting career is ruined and his custody rights have not been reinstated to date. Defendant Thompson's behavior surpasses unethical and includes criminal

behavior in which she conspired with her boyfriend, the PA State Trooper, to help cover up her acts. He arrested and incarcerated Plaintiff Father with the intent of having others convince him to plead guilty to some level of crime so Plaintiff Father could never hold Defendant Thompson accountable.

61. On March 3, 2009 Plaintiff Father met with Scott Galloway to seek help. Defendant Galloway told Plaintiff Father, "I think I know what is going on, I can file a reconsideration of the court order and make a few phone calls. My rate is $175 per hour and it will take about 10 hours to clear this up. Give me a check for $1,750 and I will take care of it. We have 20 days to file reconsideration." Plaintiff Father paid Scott Galloway $1,750 to file a reconsideration of the February 23, 2009 court order.

62. On March 5, 2009, Defendant Galloway wrote Plaintiff Father a letter confirming his interpretation of our agreement.

63. On or about March 13, 2009, Plaintiff Father received an email from Scott Galloway stating that he discussed the issues with Defendant Malady and Judge Bradley and that he did not think the Judge would grant a reconsideration.

64. On March 16, 2009, Plaintiff Father asked Defendant Galloway to withdraw from the case when he learned Defendant Galloway was not going to file the reconsideration which was his sole purpose.

65. Defendant Galloway waited until the thirtieth day after the order was issued to withdraw. The window of opportunity to file a reconsideration of the February 23, 2009 court order and an appeal had expired, leaving Plaintiff Father no legal recourse.

## INJURIES

66. By reason of defendants' outrageous acts, the acts perpetrated by defendants' would cause the minor children to lose their Father, Father to lose his custody rights of his children, Father to lose his freedom, and Father to lose his accounting career, that caused susceptibility to emotional distress and physical injury and mental anguish, including but not limited to bodily injury such as stomach aches, sleep loss, nightmares, feelings of worthlessness, paranoia, humiliation, feelings of depression anger and irritability, appetite loss, loss of freedom and earnings. Accordingly plaintiff is entitled to special damages.

# FIVE CLAIMS

67. Plaintiff wishes to include the following FIVE CLAIMS and alleges the Defendants violated the following rules and laws in each of these claims detailed in item 68 relating to Defendant Thompson, item 69 relating to Defendant Malady and item 70 relating to Defendant Galloway. Plaintiff re-alleges and incorporates paragraphs 1-66 of the complaint herein. By reason of defendants' outrageous acts that caused the minor children to lose their Father, Father to lose his custody rights of his children, Father to lose his freedom, and Father to lose his accounting career, that caused susceptibility to emotional distress and physical injury and mental anguish, including but not limited to bodily injury such as stomach aches, sleep loss, nightmares, feelings of worthlessness, paranoia, humiliation, feelings of depression anger and irritability, appetite loss, loss of freedom and earnings.

68. By virtue of the foregoing, Defendant Thompson is liable to Plaintiff for legal malpractice, perjury, extortion and conspiracy due to her willful, reckless, malicious violation and wanton disregard to follow the Pennsylvania Professional Rules of Professional Conduct committing the following crimes in the process, Title 42 U.S.C § 1985 Conspiracy to interfere with civil rights (3) Depriving persons of rights or privileges, Title 18 U.S.C. § 1621 Perjury generally, Title 18 U.S.C. § 1622 Subornation of perjury, Title 18 U.S.C. § 1623 False declarations before grand jury or court, Title 42 U.S.C. § 1983 Civil action for deprivation of rights, Title 42 U.S.C. § 1986 Conspiracy to interfere with civil rights and Title 42 U.S.C. § 1981 Equal rights under the law. The following rules of Professional Conduct were violated by Defendant Thompson:

   j. Rule 1.1 Competence: A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation. **Thoroughness and Preparation** [5] Competent handling of particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation.

k. Rule 1.3 Diligence, A lawyer shall act with reasonable diligence and promptness in representing a client. [3] Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed. Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness. [4] Unless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client. If a lawyer's employment is limited to a specific matter, the relationship terminates when the matter has been resolved.

l. Rule 1.4 Communication, (a) A lawyer shall: (4) promptly comply with reasonable requests for information; (c) A lawyer in private practice shall inform a new client in writing if the lawyer does not have professional liability insurance of at least $100,000 per occurrence and $300,000 in the aggregate per year, subject to commercially reasonable deductibles, retention or co-insurance, and shall inform existing clients in writing at any time the lawyer's professional liability insurance drops below either of those amounts or the lawyer's professional liability insurance is terminated. A lawyer shall maintain a record of these disclosures for six years after the termination of the representation of a client. **Comment:** [1] Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation. **Explaining Matters** [5] the client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so.

m. Rule 1.6 Confidentiality of Information, (a) A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b) and (c). [19] A lawyer may be ordered to reveal information relating to the representation of a client by a

court or by another tribunal or governmental entity claiming authority pursuant to other law to compel the disclosure. Absent informed consent of the client to do otherwise, the lawyer should assert on behalf of the client all non-frivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client privilege or other applicable law. In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal to the extent required

n. Rule 1.16 Declining or Terminating Representation, (c) A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation. (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law. **Comment:** [1] A lawyer should not accept representation in a matter unless it can be performed competently, promptly, without improper conflict of interest and to completion. Ordinarily, a representation in a matter is completed when the agreed-upon assistance has been concluded.

o. Rule 3.1 Meritorious Claims and Contentions: A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established. **Comment:** [1] The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure [2] The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first

been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail.

p. Rule 3.2 Expediting Litigation, A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client. **Comment:** [1] Dilatory practices bring the administration of justice into disrepute. Although there will be occasions when a lawyer may properly seek a postponement for personal reasons, it is not proper for a lawyer to routinely fail to expedite litigation solely for the convenience of the advocates. Nor will a failure to expedite be reasonable if done for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose. It is not a justification that similar conduct is often tolerated by the bench and bar. The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay.

q. Rule 3.3 Candor Toward the Tribunal, (a) A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or (3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence before a tribunal or in an ancillary proceeding conducted pursuant to a tribunal's adjudicative authority, such as a deposition, and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. (d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse. **Comment:** [1] This Rule governs the conduct of a lawyer

who is representing a client in the proceedings of a tribunal. [2] This Rule sets forth the special duties of lawyers as officers of the court to avoid conduct that undermines the integrity of the adjudicative process. A lawyer acting as an advocate in an adjudicative proceeding has an obligation to present the client's case with persuasive force. Performance of that duty while maintaining confidences of the client, however, is qualified by the advocate's duty of candor to the tribunal. Consequently, although a lawyer in an adversary proceeding is not required to present an impartial exposition of the law or to vouch for the evidence submitted in a cause, the lawyer must not allow the tribunal to be misled by false statements of law or fact or evidence that the lawyer knows to be false. [8] The prohibition against offering false evidence only applies if the lawyer knows that the evidence is false. A lawyer's reasonable belief that evidence is false does not preclude its presentation to the trier of fact. A lawyer's knowledge that evidence is false, however, can be inferred from the circumstances. **Remedial Measures** [10] Having offered material evidence in the belief that it was true, a lawyer may subsequently come to know that the evidence is false. Or, a lawyer may be surprised when the lawyer's client, or another witness called by the lawyer, offers testimony the lawyer knows to be false, either during the lawyer's direct examination or in response to cross-examination by the opposing lawyer. In such situations or if the lawyer knows of the falsity of testimony elicited from the client during a deposition, the lawyer must take reasonable remedial measures. In such situations, the advocate's proper course is to remonstrate with the client confidentially, advise the client of the lawyer's duty of candor to the tribunal and seek the client's cooperation with respect to the withdrawal or correction of the false statements or evidence. If that fails, the advocate must take further remedial action. If withdrawal from the representation is not permitted or will not undo the effect of the false evidence, the advocate must make such disclosure to the tribunal as is reasonably necessary to remedy the situation, even if doing so requires the lawyer to reveal information that otherwise would be protected by Rule 1.6. It is for the tribunal then to determine what should be done — making a statement about the matter to the trier of fact, ordering a mistrial or perhaps

nothing. **Preserving Integrity of Adjudicative Process** [12] Lawyers have a special obligation to protect a tribunal against criminal or fraudulent conduct that undermines the integrity of the adjudicative process, such as bribing, intimidating or otherwise unlawfully communicating with a witness, juror, court official or other participant in the proceeding, unlawfully destroying or concealing documents or other evidence or failing to disclose information to the tribunal when required by law to do so. Thus, paragraph (b) requires a lawyer to take reasonable remedial measures, including disclosure if necessary, whenever the lawyer knows that a person, including the lawyer's client, intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding. **Ex Parte Proceedings** [14] Ordinarily, an advocate has the limited responsibility of presenting one side of the matters that a tribunal should consider in reaching a decision; the conflicting position is expected to be presented by the opposing party. However, in any ex parte proceeding, such as an application for a temporary restraining order, there is no balance of presentation by opposing advocates. The object of an ex parte proceeding is nevertheless to yield a substantially just result. The judge has an affirmative responsibility to accord the absent party just consideration. The lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision

r. Rule 3.4 Fairness to Opposing Party and Counsel, A lawyer shall not: (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value or assist another person to do any such act; (b) falsify evidence, (c) when appearing before a tribunal, assert the lawyer's personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused.

s. Rule 3.5 Impartiality and Decorum of the Tribunal, A lawyer shall not: (a) seek to influence a judge, juror, prospective juror or other official by means prohibited by law; (b) communicate ex parte with such a person during the proceeding unless

authorized to do so by law or court order; (d) engage in conduct intended to disrupt a tribunal.

t.  Rule 4.1 Truthfulness in Statements to Others, In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person; **Comment: Misrepresentation** [1] A lawyer is required to be truthful when dealing with others on a client's behalf, but generally has no affirmative duty to inform an opposing party of relevant facts. A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. Misrepresentations can also occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements.

u.  Rule 5.1 Responsibilities of Partners, Managers and Supervisory Lawyers, (a) A partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.

v.  Rule 8.3 Reporting Professional Misconduct (a) A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority. (b) A lawyer who knows that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority. (c) This Rule does not require disclosure of information otherwise protected by Rule1.6 or information gained by a lawyer or judge while participating in an approved lawyers assistance program. **Comment:** [1] Self-regulation of the legal profession requires that members of the profession initiate disciplinary investigation when they know of a violation of the Rules of Professional Conduct. Lawyers have a similar obligation with respect to judicial misconduct. An apparently isolated violation may indicate a pattern of misconduct that only a disciplinary investigation can uncover.

Reporting a violation is especially important where the victim is unlikely to discover the offense. [4] While a lawyer may report professional misconduct at any time, the lawyer must report misconduct upon acquiring actual knowledge of said misconduct. The discretionary reporting of misconduct should not be undertaken for purposes of tactical advantage over another lawyer, to punish or inconvenience another for a personal or professional slight, or to harass another lawyer. [5] A report should be made to the bar disciplinary agency unless some other agency, such as a peer review agency, is more appropriate in the circumstances. Similar considerations apply to the reporting of judicial misconduct.

w. Rule 8.4 Misconduct It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice; (e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; or (f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law. **Comment:** [1] Lawyers are subject to discipline when they violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so or do so through the acts of another, as when they request or instruct an agent to do so on the lawyer's behalf.

69. By virtue of the foregoing, Defendant Malady is liable to Plaintiff for perjury, extortion and conspiracy due to his willful, reckless, malicious violation and wanton disregard to follow the Pennsylvania Professional Rules of Professional Conduct committing the following crimes in the process, Title 42 U.S.C § 1985 Conspiracy to interfere with civil rights (3) Depriving persons of rights or privileges, Title 18 U.S.C. § 1621 Perjury generally, Title 18 U.S.C. § 1622 Subornation of perjury, Title 18 U.S.C. § 1623 False declarations before grand jury or court and Title 18 U.S.C. § 876  Mailing threatening

communications, Title 42 U.S.C. § 1983 Civil action for deprivation of rights, Title 42 U.S.C. § 1986 Conspiracy to interfere with civil rights and Title 42 U.S.C. § 1981 Equal rights under the law. The following rules of Professional Conduct were violated by Defendant Malady:

x.  Rule 3.1 Meritorious Claims and Contentions: A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established. **Comment:** [1] The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure

y.  Rule 3.2 Expediting Litigation, A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client. **Comment:** [1] Dilatory practices bring the administration of justice into disrepute. Although there will be occasions when a lawyer may properly seek a postponement for personal reasons, it is not proper for a lawyer to routinely fail to expedite litigation solely for the convenience of the advocates. Nor will a failure to expedite be reasonable if done for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose. It is not a justification that similar conduct is often tolerated by the bench and bar. The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay.

z.  Rule 3.3 Candor Toward the Tribunal, (a) A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or (3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has

offered material evidence before a tribunal or in an ancillary proceeding conducted pursuant to a tribunal's adjudicative authority, such as a deposition, and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. (d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse. **Comment:** [1] This Rule governs the conduct of a lawyer who is representing a client in the proceedings of a tribunal. [2] This Rule sets forth the special duties of lawyers as officers of the court to avoid conduct that undermines the integrity of the adjudicative process. A lawyer acting as an advocate in an adjudicative proceeding has an obligation to present the client's case with persuasive force. Performance of that duty while maintaining confidences of the client, however, is qualified by the advocate's duty of candor to the tribunal. Consequently, although a lawyer in an adversary proceeding is not required to present an impartial exposition of the law or to vouch for the evidence submitted in a cause, the lawyer must not allow the tribunal to be misled by false statements of law or fact or evidence that the lawyer knows to be false. [8] The prohibition against offering false evidence only applies if the lawyer knows that the evidence is false. A lawyer's reasonable belief that evidence is false does not preclude its presentation to the trier of fact. A lawyer's knowledge that evidence is false, however, can be inferred from the circumstances. **Remedial Measures** [10] Having offered material evidence in the belief that it was true, a lawyer may subsequently come to know that the evidence is false. Or, a lawyer may be surprised when the lawyer's client, or another witness called by the lawyer, offers testimony the lawyer knows to be false, either during the lawyer's direct examination or in response to cross-examination by the opposing lawyer. In such situations or if the lawyer knows of the falsity of testimony elicited from the client during a deposition, the lawyer must take reasonable remedial measures. In such situations, the advocate's proper course is to remonstrate with the client confidentially, advise the client of the lawyer's duty of candor to the tribunal and seek the client's cooperation with respect to the withdrawal or correction of the

false statements or evidence. If that fails, the advocate must take further remedial action. If withdrawal from the representation is not permitted or will not undo the effect of the false evidence, the advocate must make such disclosure to the tribunal as is reasonably necessary to remedy the situation, even if doing so requires the lawyer to reveal information that otherwise would be protected by Rule 1.6. It is for the tribunal then to determine what should be done — making a statement about the matter to the trier of fact, ordering a mistrial or perhaps nothing. **Preserving Integrity of Adjudicative Process** [12] Lawyers have a special obligation to protect a tribunal against criminal or fraudulent conduct that undermines the integrity of the adjudicative process, such as bribing, intimidating or otherwise unlawfully communicating with a witness, juror, court official or other participant in the proceeding, unlawfully destroying or concealing documents or other evidence or failing to disclose information to the tribunal when required by law to do so. Thus, paragraph (b) requires a lawyer to take reasonable remedial measures, including disclosure if necessary, whenever the lawyer knows that a person, including the lawyer's client, intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding. **Ex Parte Proceedings** [14] Ordinarily, an advocate has the limited responsibility of presenting one side of the matters that a tribunal should consider in reaching a decision; the conflicting position is expected to be presented by the opposing party. However, in any ex parte proceeding, such as an application for a temporary restraining order, there is no balance of presentation by opposing advocates. The object of an ex parte proceeding is nevertheless to yield a substantially just result. The judge has an affirmative responsibility to accord the absent party just consideration. The lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision

aa. Rule 3.4 Fairness to Opposing Party and Counsel, A lawyer shall not: (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value or assist another person to do any such act; (b) falsify evidence, (c) when appearing

before a tribunal, assert the lawyer's personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused.

bb. Rule 3.5 Impartiality and Decorum of the Tribunal, A lawyer shall not: (a) seek to influence a judge, juror, prospective juror or other official by means prohibited by law; (b) communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order; (d) engage in conduct intended to disrupt a tribunal.

cc. Rule 4.1 Truthfulness in Statements to Others, In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person; **Comment: Misrepresentation** [1] A lawyer is required to be truthful when dealing with others on a client's behalf, but generally has no affirmative duty to inform an opposing party of relevant facts. A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. Misrepresentations can also occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements.

dd. Rule 4.4 Respect for Rights of Third Persons, (a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

ee. Rule 5.1 Responsibilities of Partners, Managers and Supervisory Lawyers, (a) A partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.

ff. Rule 5.2 Responsibilities of a Subordinate, (a) A lawyer is bound by the Rules of Professional Conduct notwithstanding that the lawyer acts at the direction of another person. (b) A subordinate lawyer does not violate the Rules of Professional Conduct if that lawyer acts in accordance with a supervisory lawyer's

reasonable resolution of an arguable question of professional duty. Comment: [1] Although a lawyer is not relieved of responsibility for a violation by the fact that the lawyer acted at the direction of a supervisor, that fact may be relevant in determining whether a lawyer had the knowledge required to render conduct a violation of the Rules.

gg. Rule 5.3 Responsibilities Regarding Non-lawyer Assistants, With respect to a nonlawyer employed or retained by or associated with a lawyer: (a) a partner and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer. (b) a lawyer having direct supervisory authority over the non-lawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and (c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if: (1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or (2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and in either case knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action. **Comment:** [1] Lawyers generally employ assistants in their practice, including secretaries, investigators, law student interns, and paraprofessionals. Such assistants, whether employees or independent contractors, act for the lawyer in rendition of the lawyer's professional services. A lawyer must give such assistants appropriate instruction and supervision concerning the ethical aspects of their employment, particularly regarding the obligation not to disclose information relating to representation of the client, and should be responsible for their work product. The measures employed in supervising non-lawyers should take account of the fact that they do not have legal training and are not subject to professional discipline. [2] Paragraph (a) requires lawyers with managerial authority within a law firm to make reasonable

efforts to establish internal policies and procedures designed to provide reasonable assurance that non-lawyers in the firm will act in a way compatible with the Rules of Professional Conduct. See Comment [1] to Rule 5.1. Paragraph (b) applies to lawyers who have supervisory authority over the work of a non-lawyer. Paragraph (c) specifies the circumstances in which a lawyer is responsible for conduct of a non-lawyer that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer.

hh. Rule 8.3 Reporting Professional Misconduct (a) A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority. (b) A lawyer who knows that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority. (c) This Rule does not require disclosure of information otherwise protected by Rule1.6 or information gained by a lawyer or judge while participating in an approved lawyers assistance program. **Comment:** [1] Self-regulation of the legal profession requires that members of the profession initiate disciplinary investigation when they know of a violation of the Rules of Professional Conduct. Lawyers have a similar obligation with respect to judicial misconduct. An apparently isolated violation may indicate a pattern of misconduct that only a disciplinary investigation can uncover. Reporting a violation is especially important where the victim is unlikely to discover the offense. [4] While a lawyer may report professional misconduct at any time, the lawyer must report misconduct upon acquiring actual knowledge of said misconduct. The discretionary reporting of misconduct should not be undertaken for purposes of tactical advantage over another lawyer, to punish or inconvenience another for a personal or professional slight, or to harass another lawyer. [5] A report should be made to the bar disciplinary agency unless some other agency, such as a peer review agency, is more appropriate in the circumstances. Similar considerations apply to the reporting of judicial misconduct.

ii. Rule 8.4 Misconduct It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice; (e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; or (f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law. **Comment:** [1] Lawyers are subject to discipline when they violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so or do so through the acts of another, as when they request or instruct an agent to do so on the lawyer's behalf.

70. By virtue of the foregoing, Defendant Galloway is liable to Plaintiff for legal malpractice, perjury, extortion and conspiracy due to his willful, reckless, malicious violation and wanton disregard to follow the Pennsylvania Professional Rules of Professional Conduct committing the following crimes in the process, Title 42 U.S.C § 1985 Conspiracy to interfere with civil rights (3) Depriving persons of rights or privileges, Title 18 U.S.C. § 1621 Perjury generally, Title 18 U.S.C. § 1622 Subornation of perjury, Title 18 U.S.C. § 1623 False declarations before grand jury or court, Title 42 U.S.C. § 1983 Civil action for deprivation of rights, Title 42 U.S.C. § 1986 Conspiracy to interfere with civil rights and  Title 42 U.S.C. § 1981 Equal rights under the law. The following rules of Professional Conduct were violated by Defendant Galloway:

jj. Rule 1.1 Competence: A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation. **Thoroughness and Preparation** [5] Competent handling of particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation.

kk. Rule 1.3 Diligence, A lawyer shall act with reasonable diligence and promptness in representing a client. [3] Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed. Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness. [4] Unless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client. If a lawyer's employment is limited to a specific matter, the relationship terminates when the matter has been resolved.

ll. Rule 1.4 Communication, (a) A lawyer shall: (4) promptly comply with reasonable requests for information. **Comment:** [1] Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation. **Explaining Matters** [5] the client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so.

mm.     Rule 1.16 Declining or Terminating Representation, (c) A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation. (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law. **Comment:** [1] A lawyer should not accept representation in a matter unless it can be performed competently, promptly, without improper conflict of interest

and to completion. Ordinarily, a representation in a matter is completed when the agreed-upon assistance has been concluded.

nn. Rule 3.1 Meritorious Claims and Contentions: A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established. **Comment:** [1] The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure [2] The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail.

oo. Rule 3.2 Expediting Litigation, A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client. **Comment:** [1] Dilatory practices bring the administration of justice into disrepute. Although there will be occasions when a lawyer may properly seek a postponement for personal reasons, it is not proper for a lawyer to routinely fail to expedite litigation solely for the convenience of the advocates. Nor will a failure to expedite be reasonable if done for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose. It is not a justification that similar conduct is often tolerated by the bench and bar. The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay.

pp. Rule 3.3 Candor Toward the Tribunal, (a) A lawyer shall not knowingly: (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to

the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or (3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence before a tribunal or in an ancillary proceeding conducted pursuant to a tribunal's adjudicative authority, such as a deposition, and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. (d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse. **Comment:** [1] This Rule governs the conduct of a lawyer who is representing a client in the proceedings of a tribunal. [2] This Rule sets forth the special duties of lawyers as officers of the court to avoid conduct that undermines the integrity of the adjudicative process. A lawyer acting as an advocate in an adjudicative proceeding has an obligation to present the client's case with persuasive force. Performance of that duty while maintaining confidences of the client, however, is qualified by the advocate's duty of candor to the tribunal. Consequently, although a lawyer in an adversary proceeding is not required to present an impartial exposition of the law or to vouch for the evidence submitted in a cause, the lawyer must not allow the tribunal to be misled by false statements of law or fact or evidence that the lawyer knows to be false. [8] The prohibition against offering false evidence only applies if the lawyer knows that the evidence is false. A lawyer's reasonable belief that evidence is false does not preclude its presentation to the trier of fact. A lawyer's knowledge that evidence is false, however, can be inferred from the circumstances. **Remedial Measures** [10] Having offered material evidence in the belief that it was true, a lawyer may subsequently come to know that the evidence is false. Or, a lawyer may be surprised when the lawyer's client, or another witness called by the lawyer, offers testimony the lawyer knows to be false, either during the lawyer's direct examination or in response to cross-examination by the opposing lawyer. In such situations or if the lawyer knows of the falsity of testimony elicited from the client during a deposition, the lawyer must take reasonable remedial measures. In such situations,

the advocate's proper course is to remonstrate with the client confidentially, advise the client of the lawyer's duty of candor to the tribunal and seek the client's cooperation with respect to the withdrawal or correction of the false statements or evidence. If that fails, the advocate must take further remedial action. If withdrawal from the representation is not permitted or will not undo the effect of the false evidence, the advocate must make such disclosure to the tribunal as is reasonably necessary to remedy the situation, even if doing so requires the lawyer to reveal information that otherwise would be protected by Rule 1.6. It is for the tribunal then to determine what should be done — making a statement about the matter to the trier of fact, ordering a mistrial or perhaps nothing. **Preserving Integrity of Adjudicative Process** [12] Lawyers have a special obligation to protect a tribunal against criminal or fraudulent conduct that undermines the integrity of the adjudicative process, such as bribing, intimidating or otherwise unlawfully communicating with a witness, juror, court official or other participant in the proceeding, unlawfully destroying or concealing documents or other evidence or failing to disclose information to the tribunal when required by law to do so. Thus, paragraph (b) requires a lawyer to take reasonable remedial measures, including disclosure if necessary, whenever the lawyer knows that a person, including the lawyer's client, intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding. **Ex Parte Proceedings** [14] Ordinarily, an advocate has the limited responsibility of presenting one side of the matters that a tribunal should consider in reaching a decision; the conflicting position is expected to be presented by the opposing party. However, in any ex parte proceeding, such as an application for a temporary restraining order, there is no balance of presentation by opposing advocates. The object of an ex parte proceeding is nevertheless to yield a substantially just result. The judge has an affirmative responsibility to accord the absent party just consideration. The lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision

qq. Rule 3.4 Fairness to Opposing Party and Counsel, A lawyer shall not: (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value or assist another person to do any such act; (b) falsify evidence, (c) when appearing before a tribunal, assert the lawyer's personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused.

rr. Rule 3.5 Impartiality and Decorum of the Tribunal, A lawyer shall not: (b) communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order; (d) engage in conduct intended to disrupt a tribunal.

ss. Rule 4.1 Truthfulness in Statements to Others, In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person; **Comment: Misrepresentation** [1] A lawyer is required to be truthful when dealing with others on a client's behalf, but generally has no affirmative duty to inform an opposing party of relevant facts. A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. Misrepresentations can also occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements.

tt. Rule 5.1 Responsibilities of Partners, Managers and Supervisory Lawyers, (a) A partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.

uu. Rule 8.3 Reporting Professional Misconduct (a) A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority. (b) A lawyer who knows that a judge has committed a violation of applicable rules of

judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority. (c) This Rule does not require disclosure of information otherwise protected by Rule1.6 or information gained by a lawyer or judge while participating in an approved lawyers assistance program. **Comment:** [1] Self-regulation of the legal profession requires that members of the profession initiate disciplinary investigation when they know of a violation of the Rules of Professional Conduct. Lawyers have a similar obligation with respect to judicial misconduct. An apparently isolated violation may indicate a pattern of misconduct that only a disciplinary investigation can uncover. Reporting a violation is especially important where the victim is unlikely to discover the offense. [4] While a lawyer may report professional misconduct at any time, the lawyer must report misconduct upon acquiring actual knowledge of said misconduct. The discretionary reporting of misconduct should not be undertaken for purposes of tactical advantage over another lawyer, to punish or inconvenience another for a personal or professional slight, or to harass another lawyer. [5] A report should be made to the bar disciplinary agency unless some other agency, such as a peer review agency, is more appropriate in the circumstances. Similar considerations apply to the reporting of judicial misconduct.

vv. Rule 8.4 Misconduct It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice; (e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; or (f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law. **Comment:** [1] Lawyers are subject to discipline when they violate or attempt to violate the Rules of Professional Conduct, knowingly assist or

induce another to do so or do so through the acts of another, as when they request or instruct an agent to do so on the lawyer's behalf.

# FIRST CLAIM:

## SEVERE EMOTIONAL STRESS

71. Plaintiff re-alleges and incorporates paragraphs 1-70 of the complaint herein.

72. By reason of defendants' outrageous acts that caused the minor children to lose their Father, Father to lose his custody rights of his children, Father to lose his freedom, and Father to lose his accounting career, that caused susceptibility to emotional distress and physical injury and mental anguish, including but not limited to bodily injury such as stomach aches, sleep loss, nightmares, feelings of worthlessness, paranoia, humiliation, feelings of depression anger and irritability, appetite loss, loss of freedom and earnings. Accordingly, Plaintiff is entitled to special damages and compensatory damages.

73. Defendants' actions complained of herein were conscious, intentional, wanton, and malicious, entitling Plaintiff to an award of punitive damages and compensatory damages

74. By virtue of the foregoing, Defendants are liable to Plaintiff for legal malpractice, perjury, extortion and conspiracy due to their willful, reckless, malicious violation and wanton disregard to follow the Pennsylvania Professional Rules of Professional Conduct committing the following crimes in the process, Title 42 U.S.C § 1985 Conspiracy to interfere with civil rights (3) Depriving persons of rights or privileges, Title 18 U.S.C. § 1621 Perjury generally, Title 18 U.S.C. § 1622 Subornation of perjury, Title 18 U.S.C. § 1623 False declarations before grand jury or court and Title 18 U.S.C. § 876  Mailing threatening communications, Title 42 U.S.C. § 1983 Civil action for deprivation of rights, Title 42 U.S.C. § 1986 Conspiracy to interfere with civil rights and  Title 42 U.S.C. § 1981 Equal rights under the law.

# SECOND CLAIM:
## INTENTIONAL AND RECKLESS DISREGARD

75. Plaintiff re-alleges and incorporates paragraphs 1-74 of the complaint herein.

76. Defendants acted with the intent to inflict injury and with the realization that an injury was substantially certain to result from their conduct. Knowledge of their actions could cause the minor children to lose their Father, Father to lose his custody rights of his children, Father to lose his freedom, and Father to lose his accounting career, that caused susceptibility to emotional distress and physical injury and mental anguish, including but not limited to bodily injury such as stomach aches, sleep loss, nightmares, feelings of worthlessness, paranoia, humiliation, feelings of depression anger and irritability, appetite loss, loss of freedom and earnings. Accordingly, Plaintiff is entitled to special damages and compensatory damages.

77. Defendants' actions complained of herein were conscious, intentional, wanton, and malicious, entitling Plaintiff to an award of punitive damages and compensatory damages

78. By virtue of the foregoing, Defendants are liable to Plaintiff for legal malpractice, perjury, extortion and conspiracy due to their willful, reckless, malicious violation and wanton disregard to follow the Pennsylvania Professional Rules of Professional Conduct committing the following crimes in the process, Title 42 U.S.C § 1985 Conspiracy to interfere with civil rights (3) Depriving persons of rights or privileges, Title 18 U.S.C. § 1621 Perjury generally, Title 18 U.S.C. § 1622 Subornation of perjury, Title 18 U.S.C. § 1623 False declarations before grand jury or court and Title 18 U.S.C. § 876 Mailing threatening communications, Title 42 U.S.C. § 1983 Civil action for deprivation of rights, Title 42 U.S.C. § 1986 Conspiracy to interfere with civil rights and Title 42 U.S.C. § 1981 Equal rights under the law.

# THIRD CLAIM:
# OUTRAGEOUS CONDUCT

79. Plaintiff re-alleges and incorporates paragraphs 1-78 of the complaint herein.

80. By defendants conduct which is so outrageous that it exceeds all bounds of common decency usually tolerated by a civilized society. Knowing their conduct could cause the minor children to lose their Father, Father to lose his custody rights of his children, Father to lose his freedom, and Father to lose his accounting career, that caused susceptibility to emotional distress and physical injury and mental anguish, including but not limited to bodily injury such as stomach aches, sleep loss, nightmares, feelings of

worthlessness, paranoia, humiliation, feelings of depression anger and irritability, appetite loss, loss of freedom and earnings. Accordingly, Plaintiff is entitled to special damages and compensatory damages.

81. Defendants' actions complained of herein were conscious, intentional, wanton, and malicious, entitling Plaintiff to an award of punitive damages and compensatory damages

82. By virtue of the foregoing, Defendants are liable to Plaintiff for legal malpractice, perjury, extortion and conspiracy due to their willful, reckless, malicious violation and wanton disregard to follow the Pennsylvania Professional Rules of Professional Conduct committing the following crimes in the process, Title 42 U.S.C § 1985 Conspiracy to interfere with civil rights (3) Depriving persons of rights or privileges, Title 18 U.S.C. § 1621 Perjury generally, Title 18 U.S.C. § 1622 Subornation of perjury, Title 18 U.S.C. § 1623 False declarations before grand jury or court and Title 18 U.S.C. § 876 Mailing threatening communications, Title 42 U.S.C. § 1983 Civil action for deprivation of rights, Title 42 U.S.C. § 1986 Conspiracy to interfere with civil rights and  Title 42 U.S.C. § 1981 Equal rights under the law.

# FOURTH CLAIM:
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

83. Plaintiff re-alleges and incorporates paragraphs 1-82 of the complaint herein.

84. Injuries were proximately caused by the Defendants by their negligent conduct and willful violation of the Pennsylvania Professional Rules of Professional Conduct, it would cause the minor children to lose their Father, Father to lose his custody rights of his children, Father to lose his freedom, and  Father to lose his accounting career, that caused susceptibility to emotional distress and physical injury and mental anguish, including but not limited to bodily injury such as stomach aches, sleep loss, nightmares, feelings of worthlessness, paranoia, humiliation, feelings of depression anger and irritability, appetite loss, loss of freedom and earnings. Accordingly, Plaintiff is entitled to special damages and compensatory damages.

85. Defendants' actions complained of herein were conscious, intentional, wanton, and malicious, entitling Plaintiff to an award of punitive damages and compensatory damages

86. By virtue of the foregoing, Defendants are liable to Plaintiff for legal malpractice, perjury, extortion and conspiracy due to their willful, reckless, malicious violation of and wanton disregard to follow the Pennsylvania Professional Rules of Professional Conduct committing the following crimes in the process, Title 42 U.S.C § 1985 Conspiracy to interfere with civil rights (3) Depriving persons of rights or privileges, Title 18 U.S.C. § 1621 Perjury generally, Title 18 U.S.C. § 1622 Subornation of perjury, Title 18 U.S.C. § 1623 False declarations before grand jury or court and Title 18 U.S.C. § 876  Mailing threatening communications, Title 42 U.S.C. § 1983 Civil action for deprivation of rights, Title 42 U.S.C. § 1986 Conspiracy to interfere with civil rights and  Title 42 U.S.C. § 1981 Equal rights under the law.

# FIFTH CLAIM:
# ABUSE OF PROCESS

87. Plaintiff re-alleges and incorporates paragraphs 1-86 of the complaint herein.

88. Defendants, with malice, used the legal process to accomplish a purpose for which it was not designated and with knowledge their outrageous acts would cause the minor children to lose their Father, Father to lose his custody rights of his children, Father to lose his freedom, and  Father to lose his accounting career, that caused susceptibility to emotional distress and physical injury and mental anguish, including but not limited to bodily injury such as stomach aches, sleep loss, nightmares, feelings of worthlessness, paranoia, feelings of depression anger and irritability, appetite loss, loss of freedom and earnings. Accordingly Plaintiff is entitled to special damages and compensatory damages.

89. Defendants' actions complained of herein were conscious, intentional, wanton, and malicious, entitling Plaintiff to an award of punitive damages and compensatory damages.

90. By virtue of the foregoing, Defendants are liable to Plaintiff for legal malpractice, perjury, extortion and conspiracy due to their willful, reckless, malicious violation and wanton disregard to follow the Pennsylvania Professional Rules of Professional Conduct committing the following crimes in the process, Title 42 U.S.C § 1985 Conspiracy to interfere with civil rights (3) Depriving persons of rights or privileges, Title 18 U.S.C. § 1621 Perjury generally, Title 18 U.S.C. § 1622 Subornation of perjury, Title 18 U.S.C.

§ 1623 False declarations before grand jury or court and Title 18 U.S.C. § 876 Mailing threatening communications, Title 42 U.S.C. § 1983 Civil action for deprivation of rights, Title 42 U.S.C. § 1986 Conspiracy to interfere with civil rights and  Title 42 U.S.C. § 1981 Equal rights under the law.

# PRAYER FOR RELIEF

WHEREFORE Plaintiff David Jay Nuyannes prays for entry of judgment against the Defendants Nichole Marie Thompson, Esquire and individual, Scott D. Galloway, Esquire and individual, and Eugene J. Malady, Esquire and individual:

1. for compensatory damages in the amount of $4,816,263;

2. for special damages (punitive) in the amount of $1,000,000;

3. for award of Attorney's Fees per 42 U.S.C. § 1988 : US Code - Section 1988: Proceedings in vindication of civil rights (b) Attorney's fees;

4. that all costs of suit herein be awarded;

5. such other and further relief as the court may deem just and proper.

# <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all issues for which a right to jury trial exists.


Respectfully submitted




David J. Nuyannes (*Pro se*)

## **VERIFICATION**

DAVID J. NUYANNES, PRO SE, hereby makes the following statements subject to the penalties of 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorities:

That I verify the statements set forth in the foregoing Pleading are true and correct to the best of my knowledge, information and belief.

Date: March 24, 2011

DAVID J. NUYANNES
*Pro se*