## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID NUYANNES, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.  11-2029 |
| NICHOLE THOMPSON, ESQUIRE, | : | |
| SCOTT GALLOWAY, ESQUIRE; and | : | |
| JOHN DOES 1-10, | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM

BUCKWALTER, S. J.                                                                March 27, 2012

Currently pending before the Court are two separate Motions to Dismiss by Defendants

Nichole Thompson, Esquire and Scott Galloway, Esquire.  For the following reasons, the

Motions are granted in part without prejudice and denied in part.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Commencement of Plaintiff's Divorce Proceedings

According to the facts set forth in the First Amended Complaint, in August 2008,

Plaintiff David Nuyannes's then-wife, Louise King, petitioned the Court of Common Pleas of

Delaware County, Pennsylvania for Plaintiff to provide child and spousal support, despite the

fact that King and Nuyannes still resided in their marital home with their two children.  (Am.

Compl. ¶ 10.)  On September 12, 2008, Plaintiff petitioned for divorce and, approximately one

week later, King sought a Protection from Abuse ("PFA") order claiming Plaintiff had made

terroristic threats.  (Id. ¶¶ 11–12.)  As a result of that latter filing, Plaintiff was removed from the

marital home pending a final PFA hearing.  (Id. ¶ 13.)  At the final PFA hearing, King informally withdrew her petition in exchange for exclusive possession of the home, with Plaintiff receiving unlimited visitation of their children, then eleven and fourteen.  (Id. ¶¶ 12, 14.)  Subsequently, however, King refused Plaintiff's access to the children and, in turn, Plaintiff filed a petition for custody.  (Id. ¶¶ 15-16.)  A hearing was held in November 2008, at which time Plaintiff was awarded custody of the children every other weekend and two nights per week upon Plaintiff obtaining suitable housing.  (Id. ¶ 17.)

### B.     Facts Involving Defendant Nichole Thompson

King then moved for contempt claiming, among other things, that Plaintiff failed to make an approximate $10,000 payment to her.  (Id. ¶ 18.)  In anticipation of the contempt hearing scheduled for late December 2008, Plaintiff retained Defendant Nichole Thompson, Esquire.  (Id. ¶ 19.)  Thompson, acting on Plaintiff's behalf, filed a cross-contempt petition alleging, in part, that King refused to abide by Plaintiff's visitation rights.  (Id. ¶ 20.)  Just prior to the contempt hearing, Plaintiff and King resolved the petitions by mutual agreement.  (Id. ¶ 21.)  Nonetheless, to ensure the parties' compliance, the hearing was rescheduled to February 2009.  (Id. ¶ 22.)  When the mutual resolution of the petitions subsequently fell through, the parties prepared to proceed to the February hearing date.  (Id. ¶ 23.)  Because Plaintiff was to be out of the country on vacation, Plaintiff directed Thompson to file for an adjournment.  (Id. ¶ 24.)  She did so too late, however, and the hearing was held in Plaintiff's absence.  (Id.)

At the hearing, Thompson conceded to the court that Plaintiff was in contempt of a

December 2008 Order,[1] despite the fact that, according to Plaintiff, no such court order ever existed. (Id. ¶ 25.)  As a result, Plaintiff was held in contempt and sentenced to six months in prison.  (Id. ¶ 26.)  Also at that February hearing, Thompson presented a motion to withdraw as counsel for Plaintiff, indicating that she did not want to practice divorce law anymore.  (Id. ¶ 27.)  The court directed Thompson to forward the contempt order to Plaintiff, who was not present, thus effectuating her withdrawal.  (Id. ¶ 28.)  At the same time, the court terminated Plaintiff's custody rights.  (Id. ¶ 29.)

Subsequent to the hearing, Thompson did not forward a copy of the Order, as directed by the court, but rather sent an e-mail to Plaintiff inaccurately summarizing the proceeding.  (Id. ¶ 30.)  Most notably, she did not advise Plaintiff that his custody rights had been terminated.  (Id. ¶ 32.)  Unaware of this termination, Plaintiff took his daughter out for ice cream the following week during her school day, and returned her to school one hour later.  (Id. ¶ 33.)  As a result of this visitation, a warrant was issued for Plaintiff's arrest in March 2009.  (Id. ¶ 34.)  Thereafter, the Pennsylvania State Police, coordinated by Defendants John Doe and Gerard McShea, visited Plaintiff at Plaintiff's new girlfriend's house.  (Id. ¶ 35.)  At that time, Plaintiff discovered that his prior in-school visitation with his daughter on her fifteenth birthday caused a felony warrant to issue for his arrest for interference with custody of a child, *i.e.* kidnapping.  (Id.)  Plaintiff avers that McShea was and is Thompson's "paramour" acting at the behest of Thompson or in

---

[1]  At various times throughout the Amended Complaint, Plaintiff references dates that could not possibly fit the chronology of the case.  For example, in paragraph 25, the Amended Complaint states that Thompson affirmed that Plaintiff was in contempt of the "December 2010" Order.  (Id. ¶ 25.)  As this hearing occurred in February 2009, there could not possibly have been any representation that Plaintiff was not in compliance with a future order.  (See also id. ¶ 20.)  Notwithstanding these multiple errors, the Court makes every effort to assign the correct dates to the various events.

Thompson's violation of her and Plaintiff's attorney-client privilege.  (Id. ¶ 36.)  In June 2009, McShea seized Plaintiff's vehicle, which has yet to be returned.  (Id. ¶ 37.)  Thereafter, McShea coordinated multiple searches and seizures of Plaintiff's girlfriend's and Plaintiff's parents' homes, as well as stopping and pulling over his girlfriend in her vehicle.  (Id. ¶ 38.)  Through a "sting operation" orchestrated by McShea, on July 13, 2009—Thompson's birthday—Plaintiff was arrested at his then-lawyer's office and imprisoned for approximately six months.  (Id. ¶ 39.)

In January 2010, Plaintiff successfully argued that both the contempt and interference charges were legally impossible, and was released from prison pending trial.  (Id. ¶ 40.)  In May 2010, the kidnapping charges were "nolle prossed."

### C.    Facts Involving Defendant Scott Galloway

Shortly after Thompson's withdrawal as counsel in February 2009, Plaintiff retained Defendant Scott Galloway, Esquire.  (Id. ¶ 42.)  Unaware of the custody termination order at that time, Plaintiff directed Galloway only to move for reconsideration and/or appeal of the contempt order.  (Id. ¶ 43.)  Thereafter, Galloway refused ongoing representation, at which point Plaintiff terminated him.  (Id. ¶ 44.)  Nonetheless, Galloway remained formal counsel to Plaintiff and refused to execute a withdrawal and substitution of appearance until the end of the thirty-day time period for seeking either reconsideration and/or appeal.  (Id. ¶ 45.)  This late filing of Galloway's substitution of appearance effectively precluded him from retaining other counsel to file for reconsideration and/or appeal.  (Id. ¶ 46.)  Prior to that time, Galloway had done nothing to represent Plaintiff or protect his rights.  (Id. ¶ 47.)

### D.    Claimed Damages

Before June 2008, Plaintiff was the director of finance and accounting at "Mother's

Work"—a maternity clothes retailer—earning approximately $140,000 per year.  (<u>Id.</u> ¶ 48.)  Due

to a corporate reorganization in June 2008, Plaintiff, along with many other employees, was laid

off.  (<u>Id.</u> ¶¶ 49–50.)  At a child support hearing in January 2009, Thompson failed to argue

against a child support order, wherein Plaintiff was required to pay $1,900 per month, when he

was only earning $1,800 per month in unemployment.  (<u>Id.</u> ¶ 51.)  In turn, as a result of his arrest

and incarceration, as well as the child support arrearages affecting his credit score, Plaintiff has

been unable to find employment.  (<u>Id.</u> ¶ 52.)  Most drastically, Plaintiff sustained the termination

of his parental rights over his children.  (<u>Id.</u> ¶ 53.)

     E.    **<u>Procedural History</u>**

     On March 24, 2011, Plaintiff initiated the current lawsuit against Defendants Nichole

Marie Thompson, Esquire, Eugene Malady, Esquire (King's attorney), and Scott D. Galloway,

Esquire.  On September 19, 2011, he filed his First Amended Complaint, this time against only

Defendants Thompson, Galloway, and John Does 1–10.  This pleading sets forth four causes of

action as follows: (1) professional negligence/malpractice against Defendants Galloway and

Thompson (<u>id.</u> ¶¶ 55–58); (2) breach of contract/covenant of good faith and fair dealing against

Defendants Galloway and Thompson (<u>id.</u> ¶¶ 59–62); (3) breach of fiduciary duty against

Defendants Galloway and Thompson (<u>id.</u> ¶¶ 63–66); and (4) violation of the Fourth and

Fourteenth Amendments to the United States Constitution (malicious prosecution) against

Defendant Thompson.  (<u>Id.</u> ¶¶ 67–73.)

     In compliance with Pennsylvania Rule of Civil Procedure 1042.3, Plaintiff filed and

served Certificates of Merit on both Defendants Galloway and Thompson on December 15, 2011.

Thereafter, on January 4, 2012, Defendant Galloway filed a Motion to Dismiss the Complaint

under Federal Rule of Civil Procedure 12(b)(6).  Defendant Thompson followed suit with her

own Rule 12(b)(6) Motion, filed on January 19, 2012.  On March 8, 2012, Plaintiff responded to

both Motions, making them ripe for judicial consideration.

## II.     STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has

not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v.

United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, 550 U.S. 544

(2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  Following these

basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009),

subsequently defined a two-pronged approach to a court's review of a motion to dismiss.  "First,

the tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  Id., 129 S. Ct. at 1949.  Thus,

although "Rule 8 marks a notable and generous departure from the hyper-technical, code-

pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed

with nothing more than conclusions."  Id. at 1950.  Second, the Supreme Court emphasized that

"only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id.

"Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals

observed, be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense."  Id.  A complaint alleges, but does not show, an entitlement to

relief when the well-pleaded facts do not permit the court to infer more than the mere possibility

of misconduct.  Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008)

(holding that: (1) factual allegations of complaint must provide notice to defendant; (2)

complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's

"'factual allegations must be enough to raise a right to relief above the speculative level.'")

(quoting Twombly, 550 U.S. at 555).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of

review have remained static.  Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008

WL 2779079, at *2 (W.D. Pa. July 15, 2008).  The general rules of pleading still require only a

short and plain statement of the claim showing that the pleader is entitled to relief and need not

contain detailed factual allegations.  Phillips, 515 F.3d at 233.  Further, the court must "accept all

factual allegations in the complaint as true and view them in the light most favorable to the

plaintiff."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the

court must "determine whether, under any reasonable reading of the complaint, the plaintiff may

be entitled to relief."  Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

Both parties in the present action move to dismiss all claims against them.  The Court

considers each cause of action individually.[2]

---

[2]   The Court notes that Defendant Thompson's Motion is untimely.  Under Pennsylvania
Rule of Civil Procedure 1042.4, "[a] defendant against whom a professional liability claim is
asserted shall file a responsive pleading within . . . twenty days after service of the certificate of
merit on that defendant, whichever is later."  Pa. R. Civ. P. 1042.4.  Similarly Rule 12(b) of the
Federal Rules of Civil Procedure provides that motions under that rule "shall be made before
pleading if a further pleadings is permitted."  Fed. R. Civ. P. 12(b).  "Therefore, a motion to
dismiss for failure to state a claim, like the answer itself, normally must be filed within twenty

### A.    Professional Negligence Claim

As a primary matter, Defendants Thompson and Galloway challenge the core of the action against them—the professional negligence claim.  "Under Pennsylvania law, clients may bring tort actions against professionals who do not provide the client with services consistent with the standard expected of the profession."  In re Am. Life Investors Ins. Co. v. Annuity Mktg. & Sales Practices Litig., Nos. Civ.A.04-2535, 05-2101, 05-3588, 2007 WL 2541216, at *32 (E.D. Pa. Aug. 29, 2007).  The action is limited to attorneys, as well as other specific groups of persons licensed in Pennsylvania or another state.  Id. (citing Pa. R. Civ. P. 1042.1).  The elements of a professional negligence cause of action against an attorney include: (1) employment of the attorney or other basis for duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such failure proximately caused damage to the plaintiff.  Kituskie v. Corbman, 714 A.2d 1027, 1029 (Pa. 1998).  Via the present Motions, Defendants take issue with each of these elements.  For clarity of discussion, the Court individually discusses the elements as applied to each Defendant.

---

days of the service of the summons and complaint upon the defendant."  Seal v. Riverside Fed. Sav. Bank, 825 F. Supp. 686, 694 n.13 (E.D. Pa. 1993).

Because the certificate of merit was not served on Defendant Thompson until December 15, 2011, she had twenty days from that date—until January 4, 2012—to file a responsive pleading.  Nonetheless, she failed to file the present Motion to Dismiss until January 19, 2012, more than two weeks after it was due.  Notwithstanding this untimeliness, the Court will consider the Motion, with the caveat that future delays will not be condoned.

1.    **Duty and Breach**

a.    **Defendant Thompson**

Defendant Thompson[3] first argues that any duty owed to Plaintiff ended upon her termination as counsel, meaning that she cannot be liable for any alleged errors made after that time.  She reasons that, according to the original Complaint, both Plaintiff and Defendant Thompson agreed, during a January 15, 2009[4] meeting, that Thompson would no longer represent Plaintiff, but would still file the Praecipe to Withdrawal of the Complaint in Divorce and Custody.  (Def. Thompson's Mem. Supp. Mot. to Dismiss 6 (citing Compl. ¶ 38).)  Both the Praecipe to Withdrawal and the Motion to Withdraw as Counsel were filed on January 23, 2009, meaning that she owed no further duty to Plaintiff as of that date.  As the sum of Plaintiff's professional negligence claim alleges conduct after that date, she concludes that she committed no professional negligence.

---

[3]  In moving to dismiss this claim, Defendant Thompson makes numerous references to matters outside the pleadings, attached as exhibits to her brief.  It is well-established that a court may generally not "consider matters extraneous to the pleadings" when considering a motion to dismiss, without converting the motion into one for summary judgment upon notice and reasonable opportunity to respond.  In re Burlington Coat Factory § Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Fed. R. Civ. P. 12(d).  Given the early stages of this litigation, it is not appropriate to convert the present Motion into one seeking summary judgment.  Accordingly, the Court simply disregards any references by Defendant Thompson to extraneous evidence.

[4]  Throughout Defendant Thompson's Motion, she interchangeably and inconsistently uses the years 2008, 2009, and 2010 as dates for certain events.  For example, on page six of her Memorandum in Support, she states that the meeting between her and Plaintiff terminating her representation occurred on January 15, 2008.  (Def. Thompson's Mem. Supp. Mot. to Dismiss 6.)  According to both the Complaint and the Amended Complaint, however, Plaintiff did not retain Plaintiff until December of 2008 and thus could not have terminated her almost a year earlier. (Compl. ¶ 10; Am. Compl. ¶ 19.)  While some of Thompson's errors are presumably in response to Plaintiff's own errors in the Amended Complaint, some of these errors are clearly of Defendant Thompson's own making.  Accordingly, the Court engages in its best efforts to sort through the various dates.

This argument, however, incorrectly circumscribes the scope of Thompson's legal duty as Plaintiff's counsel.  The existence of an established attorney-client relationship satisfies the first element of duty between an attorney and client.  Cost v. Cost, 677 A.2d 1250, 1253–54 (Pa. Super. Ct. 1996) (holding that "[o]ur Supreme Court retained privity (an attorney-client or analogous professional relationship, or specific undertaking as an element of proof necessary to maintain an action in negligence for professional malpractice") (internal quotations omitted).  That duty persists until appropriate withdrawal is accomplished under Pennsylvania law.  Fraternal Order of Police, Lodge No. 5 v. City of Phila., 655 A.2d 666, 668 (Pa. Commw. Ct. 1995) ("Under [Pa. R. Civ. P. 1012], an attorney remains of record until an order of court allows the attorney's withdrawal or another attorney simultaneously enters an appearance when the original attorney withdraws."); see also Commonwealth v. White, 871 A.2d 1291, 1294 (Pa. Super. Ct. 2005) ("[O]nce counsel has entered an appearance on a defendant's behalf he is obligated to continue representation until the case is concluded or he is granted leave by the court to withdraw his appearance.").  Under Pennsylvania Rule of Conduct 1.16, "[e]xcept as stated in paragraph (c), a lawyer shall not represent a client or, where the representation has commenced, shall withdraw from the representation of a client if: . . . (3) the lawyer is discharged."  Pa. R. Prof. Conduct 1.16(a).  Nonetheless, an attorney "must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation."  Pa. R. Prof. Conduct 1.16(c).  Pennsylvania Rule of Civil Procedure 1012(b) goes on to provide that:

> (b)(1) Except as provided in paragraph (2), an attorney may not withdraw his or her appearance without leave of court.
>
> (2) An attorney may withdraw his or her appearance without leave of court if another attorney (I) has previously entered or (ii) is simultaneously entering an appearance

on behalf of the party, and the change of attorneys does not delay any stage of the litigation.

Pa. R. Civ. P. 1012; see also Commonwealth v. Scheps, 523 A.2d 363, 366 (Pa. Super. Ct. 1987) ("[W]here a client dismisses his lawyer, it is mandatory that the lower court grant permission for leave to withdraw.").

In this case, both the Complaint and Amended Complaint assert that Plaintiff retained Defendant in December 2008, as counsel for his divorce proceedings. (Compl. ¶ 10, Am. Compl. ¶ 19.) In addition, according to the Amended Complaint, Defendant Thompson was not given leave to withdraw until the state court granted her withdrawal motion at the close of the hearing on February 23, 2009. (Am. Compl. ¶ 28.) Finally, the withdrawal was conditioned on the court's directive that Thompson forward the contempt order to Plaintiff. (Id.)

Having found that the attorney-client relationship ran from at least December 2008 to February 23, 2008, the Court determines that several alleged missteps by Thompson fell within the temporal scope of her duties as counsel. First, Plaintiff asserts that because he was to be out of the country on vacation, he directed Thompson to file for an adjournment of the February 23, 2009 hearing. (Id. ¶ 24.) She did so too late, however, and the hearing was held in Plaintiff's absence. (Id.) Second, Plaintiff claims that, during that hearing, Thompson conceded to the Court that Plaintiff was in contempt of the December 2008 order,[5] despite the fact that no such

---

[5] Defendant Thompson seizes on Plaintiff's error in the Amended Complaint, wherein he stated that he was found in contempt of a "December 2010" order. She argues that because she did not represent Plaintiff after February 2009, she could not have possibly been negligent with respect to any December 2010 order. It is abundantly clear, however, from both the original Complaint (to which Defendant Thompson cites repeatedly in other contexts) and from a reasonable reading of the Amended Complaint, that the order to which Plaintiff was referring

order existed.  (Id. ¶ 25.)   Third and finally, Plaintiff argues that although the Court explicitly

directed Thompson to forward the contempt order to Plaintiff—an order which terminated

Plaintiff's custody rights—Thompson failed to do so.  (Id. ¶¶ 28–29.)  In fact, Thompson's post-

hearing e-mail to Plaintiff summarizing the proceeding omitted a description of the precise

portion of the order terminating his custody rights.  (Id. ¶¶ 30–32.)  Taking the facts of the

Amended Complaint as true, as the Court must do at this juncture, Thompson committed several

acts of negligence.[6]

In sum, Plaintiff alleges a valid claim of duty on the part of Defendant Thompson, as well

as potential breaches of that duty during the course of her representation.  Accordingly,

Thompson's Motion on this point is denied.

### b.    Defendant Galloway

In similar fashion, Defendant Galloway contends that he owed no duty to Plaintiff

because he was terminated shortly after his retainer.  More precisely, Galloway asserts that, as

pled in the Amended Complaint, Plaintiff retained him after the February 23, 2009 hearing to

move for reconsideration and/or appeal of the contempt order.  (Am. Compl. ¶ 43.)  Before he

had the opportunity to file either of the requested motions, however, he was terminated by

was from December 2008.

[6]  Citing to paragraph 44 of the original Complaint, Thompson argues that "the court allowed both Defendant and opposing counsel to mail Plaintiff a copy of the February 23, 2009 Order and claims it was not received because both parties had the incorrect mailing address for Plaintiff."  In reality, paragraph 44 states that the court specifically directed Defendant Thompson to send the Order and that she either did not send it or sent it to the wrong address.  Plaintiff never suggests—as argued by Thompson—that he provided an incorrect mailing address.  (Am. Compl. ¶ 44.)

Plaintiff.  (Id. ¶ 44.)  Accordingly, he claims to have owed no duty to Plaintiff.

Like Defendant Thompson's argument, Defendant Galloway's argument also must fail. Taking the facts in the Amended Complaint as true, Defendant Galloway did not seek leave to withdraw or enter a substitution of appearance until March 23, 2009—the end of the thirty-day window for seeking an appeal.  (Id. ¶ 46.)  As set forth above, Pennsylvania law requires that an attorney obtain leave of court before formally withdrawing from representation.  As the attorney-client relationship persisted until the state court granted leave to withdraw, Defendant Galloway is potentially liable for legal malpractice.[7]

## 2.     Proximate Causation

The next element at issue in Plaintiff's professional negligence claim is proximate causation.  Under Pennsylvania law, to establish professional negligence, the plaintiff must "prove that he had a viable cause of action against the party he wished to sue in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case (often referred to as proving a 'case within a case')."  Kituskie v. Corbman, 714 A.2d 1027, 1030 (Pa. 1998).  In other words, the plaintiff must "prove that the underlying legal representation would have achieved whatever the plaintiff[] hoped to achieve.  If the underlying case . . . would have failed regardless of the defendant's professional negligence, then the plaintiffs have not

---

[7]  The Court is unpersuaded by Defendant Galloway's citation to the Pennsylvania Suggested Standard Civil Jury Instructions, which state, in pertinent part that "[o]nce a lawyer has undertaken to serve a client, his or her employment and duty as a lawyer continues until ended by consent or request of the client."  Pa. SSJI (Civ.) § 15.20 (2011).  Such suggested instructions are neither binding law that can trump the clear directives of the Pennsylvania Rules of Civil Procedure nor do they contradict the mandate that a lawyer obtain leave of court before terminating his duty to a client.

13

suffered actual loss." AsTech Int'l, LLC v. Husick, 676 F. Supp. 2d 389, 402 (E.D. Pa. 2009). The Court again considers this element with respect to each individual Defendant.

### a.      Defendant Thompson

As to Defendant Thompson, Plaintiff avers that because of Thompson's failure to seek a continuance of his February 2009 hearing, he was absent and unable to defend himself.  (Am. Compl. ¶ 24.)  Thereafter, at the February 2009 hearing, Thompson conceded that Plaintiff violated a December 2008 order, even though, according to Plaintiff, there was no such order. (Id. ¶¶ 24–25.)  Moreover, Plaintiff asserts that because Thompson failed to either forward a copy of the February 2009 court order to Plaintiff or convey to him via e-mail that his custody rights were terminated, Plaintiff picked up his daughter, in violation of that termination.  (Id. ¶¶ 30–34.)

In an attempt to brand such allegations as legally insufficient, Defendant Thompson contends that "[i]n order to prevail on this claim, Plaintiff would have to prove at trial that he was not in contempt of a previous court order and that his custody rights would not have been terminated."  (Def. Thompson's Mem. Supp. Mot. to Dismiss 10.)  She goes on to contend that "Plaintiff cannot prove beyond mere speculation that he would have prevailed at the February 23, 2009 hearing.  Plaintiff admits there was an order from the September 2008 hearing, while denying one existed from the December 2008 hearing, yet never states how he complied with the order(s) to prevent a contempt order from being issued."  (Id. at 11.)  She reasons that because no subsequent attorneys filed a motion to reconsider or filed an appeal of the order, it is extremely unlikely that Plaintiff would have prevailed during the hearing.  (Id.)  Finally, she claims that Plaintiff fails to allege that had he received a copy of the February 2009 order, he would have

14

complied with it to prevent the ramifications for non-compliance.

While cursorily paying some lip service to the Rule 12(b)(6) standard, the substance of Defendant Thompson's argument conflates this standard with that required to a motion for summary judgment.  As set forth above, the Court must, at this stage of the litigation, review only the well-pleaded facts in the Amended Complaint to determine if they set forth a plausible claim for relief.  In this case, they clearly do.  Plaintiff has specifically asserted, through use of detailed factual allegations, that Defendant Thompson's professional negligence caused him to miss his own contempt hearing and be subject to her faulty admission to the court that he violated a contempt order that never existed.  Even assuming *arguendo* that the contempt order would have been entered notwithstanding such an admission, Thompson's subsequent failure to notify him of the termination of custodial rights plausibly resulted in his violating that termination by picking up his daughter.  In simpler terms, the reasonable inferences drawn from such allegations suggest that but for Defendant Thompson's professional negligence, Plaintiff would neither have had his parental rights terminated nor had a contempt order entered against him.  Moreover, he would not have subsequently violated the termination of his parental rights, leaving him subject to a warrant for his arrest.  As such, the Amended Complaint is sufficient to raise the right to relief above the speculative level.[8]

---

[8]  Defendant Thompson spends a significant amount of time in her brief arguing that Plaintiff's subsequent attorneys' failure to file a motion for reconsideration or an appeal from the contempt order did not proximately cause him any harm since a subsequent attorney could have sought reconsideration at any time.  Plaintiff, however, does not allege such claims against Defendant Thompson since she was not his attorney of record at the time.  Accordingly, the Court need not consider this argument.  To the extent Defendant Thompson seeks to raise this argument on behalf of her co-Defendant, Scott Galloway, she has no standing to do so.

Defendant Thompson also argues that had she committed malpractice during the February

### b.   **Defendant Galloway**

Defendant Galloway makes a similar argument that his alleged negligence is not the proximate cause of any harm suffered by Plaintiff.  His contention is founded on three separate grounds.  First, he asserts that because a contempt order is not a final order, and there is no time limit in which a court may reconsider its own interlocutory ruling, a subsequent attorney could have filed a timely motion for reconsideration or an appeal after the expiration of thirty days. Second, he claims that Plaintiff was not precluded from having a new attorney enter his or her appearance prior to Galloway's withdrawal and filing either a motion for reconsideration or appeal.  Finally, Defendant Galloway contends that Plaintiff has failed to show that a motion for reconsideration and/or appeal would have been successful.

With respect to the first argument, Defendant Galloway argues that "[w]here an order does not effectively place the litigant out of court or end the lawsuit, it is within the trial court's discretion to entertain a motion to reconsider the interlocutory order outside the thirty day time limit set forth in 42 Pa.C.S.A. § 5505."  (Def. Galloway's Mem. Supp. Mot. to Dismiss 5 (quoting Hutchison by Hutchison v. Luddy, 611 A.2d 1280, 1288 (Pa. Super. Ct. 1992)).)  He goes on to assert that the contempt order in question was not a final order and, as such, the trial court judge had the inherent ability to reconsider his ruling at any time as the case proceeded.[9]

---

hearing, "it is more than likely that a subsequent attorney would have immediately taken such action to file a motion to reconsider or an appeal."  (Def. Thompson's Mem. Supp. Mot. to Dismiss 9.)  Notably, however, this is the precise basis for Plaintiff's malpractice action against Galloway and, as such, does not, in any way, bolster Thompson's claim of non-negligence.

[9]  Defendant Galloway also argues that because no subsequent attorney has ever attempted to file a motion for reconsideration or an appeal—thus precluding any definitive court ruling on this issue—Plaintiff has failed to exhaust his available remedies.  The Court notes,

While an order finding a party in contempt is generally interlocutory and not appealable unless it imposes sanctions, Rhoades v. Pryce, 874 A.2d 148, 151 (Pa. Super. Ct. 2005), Pennsylvania law is clear that "[a]n order finding a party in contempt for failure to comply with a prior order of court is final and appealable if sanctions are imposed." Glynn v. Glynn, 789 A.2d 242, 246 (Pa. Super. Ct. 2001). In this case, neither party explicitly states whether or not the February 2009 contempt order imposed sanctions. Plaintiff, however, alleges that, via that order, his custodial rights were terminated and he was sentenced to six months in prison. (Am. Compl. ¶¶ 26, 29.) The reasonable inference from such allegations is that the contempt order did indeed impose sanctions and, thus, was a final order that had to be appealed within thirty days under 42 Pa.C.S. § 5505. Certainly, Defendant Galloway is free to prove otherwise in a properly-filed and properly-supported summary judgment motion. For purposes of the present Motion to Dismiss, however, this contention cannot survive judicial review.

Defendant Galloway's second argument—that Plaintiff's subsequent attorney could have entered her appearance prior to Galloway's withdrawal and within the thirty day window for filing an appeal—likewise is meritless. Although he asserts that there are no procedural limits on when an attorney admitted to the Pennsylvania Supreme Court may enter his or her appearance in an action on behalf of a client, he fails to cite to any valid authority for this proposition. Rather, he references Pennsylvania Rule of Civil Procedure 1012(a), which governs entry of appearance by a *party*.[10] As noted above, under Rule 1012, "an attorney remains of record until an order of

however, that exhaustion of remedies is not required in a legal malpractice action.

[10] Specifically, this Rule states:

A party may enter a written appearance which shall state an address at which

17

court allows the attorney's withdrawal or another attorney simultaneously enters an appearance when the original attorney withdraws." Fraternal Order of Police, 655 A.2d at 668.  Because, at the time that the thirty-day time limit for appealing the contempt order had lapsed, Galloway had neither received leave to withdraw nor been properly substituted by other counsel, he was obligated to continue representing Plaintiff's interests.  In turn, Plaintiff was entitled to rely on that continued representation and expect that Galloway would file the notice of appeal.

Defendant Galloway's final argument asserts that Plaintiff's Amended Complaint fails to establish that a motion for reconsideration and/or appeal would have been successful.  As noted above, "the plaintiff in a legal malpractice action must prove that the underlying representation would have been successful." ASTech Int'l, 676 F. Supp. 2d at 400–01.  Defendant Galloway contends no facts could possibly be pled to properly allege that a reconsideration motion or appeal would have been successful because (1) motions for reconsideration are sparingly granted; (2) interlocutory appeals are disfavored; and (3) Plaintiff's former counsel, Thompson, expressly

---

pleadings and other legal papers may be served in the manner provided by Rule 440(a)(1) and a telephone number. The appearance may also include a telephone facsimile number as provided in Rule 440(d). Such appearance shall not constitute a waiver of the right to raise any defense including questions of jurisdiction or venue. Written notice of entry of an appearance shall be given forthwith to all parties.

Pa. R. Civ. P. 1012(a).  Presumably, the more applicable rule in this case would be Pennsylvania Rule of Appellate Procedure 120, which states, in pertinent part:

Where new counsel enters an appearance on behalf of a party currently represented by counsel and there is no simultaneous withdrawal of appearance, new counsel shall serve the party that new counsel represents and all other counsel of record and file a certificate of service.

Pa. R. App. P. 120.

conceded that Plaintiff was in contempt of a court order.  As such, "it is extremely unlikely that the trial court would have vacated its contempt order upon the motion of new attorney or that an appeal would have succeeded."  (Def. Galloway's Mem. Supp. Mot. Dismiss 11–12.)

At first blush, this argument gives the Court some pause, since Plaintiff has few allegations regarding the merits of his proposed appeal.  Nonetheless, at this stage of the proceedings the Court finds sufficient factual allegations to set forth a plausible claim.  Plaintiff alleges that he was found in contempt for violating an order that never existed.  (Am. Compl. ¶ 25; Compl. ¶¶ 45, 49.)  Taking this allegation as true, an appeal of that contempt order could plausibly have been successful.[11]  In short, the Court finds—albeit with some hesitation—that Plaintiff has adequately pled causation with respect to Defendant Galloway.  Therefore, the Court denies the Motions on these grounds.

### 3.    <u>Damages</u>

Finally, both Defendant Thompson and Defendant Galloway argue that the Amended Complaint fails to set forth specific damages and, as such, Plaintiff's claims for legal malpractice should be dismissed with prejudice.

An essential element of a legal malpractice action is "proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm."  <u>Kituskie</u>, 714 A.2d at 1030.  "Damages are considered remote or speculative only

---

[11]  The mere fact that Plaintiff's former counsel Thompson conceded that Plaintiff was in contempt is of no moment.  Plaintiff alleges a negligence claim against Thompson on that precise ground.  Galloway could have easily presented that negligence argument to an appellate court as grounds for seeking reversal of the contempt order.

if there is uncertainty concerning the identification of the existence of damages rather than the ability to precisely calculate the amount or value of damages." Id. "The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for [malpractice]." Rizzo v. Haines, 555 A.2d 58, 68 (Pa. 1989) (quotations omitted).

The Amended Complaint sets forth the following allegations in support of Plaintiff's claimed damages:

48.    Prior to June 2008, Plaintiff was the director of finance and accounting at "Mother's Work" (a maternity clothes retailer) earning approximately $140,000.00 per year.

49.    As a result of Mother's Work reorganization, there were massive layoffs.

50.    In June 2008, Plaintiff was laid off (among many other employees).

51.    In January 2009, at a child support hearing, Thompson failed to argue against a child support order wherein Plaintiff was charged child support in excess of his unemployment compensation: the order required him to pay $1,900.00 per month when he was only earning $1,800.00 per month in unemployment compensation.

52.    As a result of Plaintiff's arrest and incarceration, as well as the child support arrearages affecting his credit score, Plaintiff has been unable to find employment.

53.    As a result of all of the foregoing, Plaintiff's [sic] sustained the termination of his parental rights of his children.

(Am. Compl. ¶¶ 48–53.)

In response, Defendants contend that the main element of Plaintiff's damages is lost

employment, yet he concedes that he was laid off for reasons unrelated to litigation.  Moreover,

they claim that other alleged damages, such as the alleged child support arrearages affecting

Plaintiff's credit score and termination of parental rights have not been proven to be the fault of

either Defendant.  (Def. Galloway's Mem. Supp. Mot to Dismiss 13; Def. Thompson's Mem.

Supp. Mot. to Dismiss. 12.)  Finally, they contend that the remaining damages of pain, agony,

humiliation, embarrassment, and emotional distress are too speculative to be related to the

alleged negligence of Defendants or to be proved with any certainty.

Again, however, Defendants misapply the applicable standard on a Rule 12(b)(6) motion.

Taking the well-pled allegations of the Amended Complaint as true, the Court accepts that

because of Thompson's multiple alleged missteps, Plaintiff faced an impossible child support

obligation, suffered the termination of his parental rights, violated a court order that resulted in

his incarceration, and, due to his incarceration and its legal ramifications, has been unable to

secure new employment.  Moreover, as a direct result of Galloway's failure to appeal the

contempt order—the precise purpose for which he was retained—Plaintiff was unable to escape

further arrearages or sanctions.  Such allegations suggest actual loss that falls well outside the

realm of remote or speculative.

### 4.    Conclusion as to Professional Negligence Claim

Notwithstanding Defendants' assertions to the contrary, the Amended Complaint

sufficiently sets forth a plausible claim for professional negligence against both Thompson and

Galloway.  Plaintiff properly alleges that Thompson and Galloway had a duty to him as his

attorneys, that they breached that duty through multiple actions falling below the standard of

professional reasonableness, and that, as a direct and proximate result, Plaintiff suffered actual

damages.  While discovery might ultimately prove such allegations meritless, the Court may not,

at this juncture in the litigation, deem them subject to dismissal.

### B.   Breach of Contract Claim

Both Defendants next challenge Plaintiff's claim for breach of contract.  Specifically,

they assert that Plaintiff fails to allege that the parties entered into an enforceable contract with

specific contract terms.  (Def. Thompson's Mem. Supp. Mot. to Dismiss 14; Def. Galloway's

Mem. Supp. Mot. to Dismiss 14.)  Further, they claim that the Amended Complaint "fails to set

forth enough facts to raise a reasonable expectation that discovery will reveal evidence that the

parties manifested an intent to be bound by specific terms of a contract, the specific terms of that

alleged contract, and any consideration."  (Def. Thompson's Mem. Supp. Mot. to Dismiss 14;

Def. Galloway's Mem. Supp. Mot. to Dismiss 15.)

Pennsylvania courts have held that legal malpractice actions sound both in tort and in

contract.  Wachovia Bank, N.A. v. Ferretti, 935 A.2d 565, 570 (Pa. Super. Ct. 2007).  "A

plaintiff may properly bring both claims at the same time."  ASTech Int'l, 676 F. Supp. 2d at 400

(citing Gorski v. Smith, 812 A.2d 683, 693–94 (Pa. Super. Ct. 2002)).  Where a plaintiff pursues

a legal malpractice claim under a breach of contract theory, he or she must prove: "(1) the

existence of a contract, including its essential terms; (2) a breach of a duty imposed by the

contract; and (3) resultant damages."  CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058

(Pa. Super. Ct. 1999).

Under the first element, the plaintiff must establish a valid contract.  Where no written

22

retainer agreement exists, a plaintiff may introduce evidence of the parties' course of dealings to establish that an attorney-client relationship existed.  Meyers v. Sudfeld, No. Civ.A.05-2970, 2007 WL 419182, at *10 (E.D. Pa. Feb. 2, 2007).  As noted by the Pennsylvania Superior Court, "[a]bsent an express contract, an implied attorney-client relationship will be found if 1) the purported client sought advice or assistance from the attorney; 2) the advice sought was within the attorney's professional competence; 3) the attorney expressly or impliedly agreed to render such assistance; and 4) it is reasonable for the putative client to believe the attorney was representing him."  Cost v. Cost, 677 A.2d 1250, 1254 (Pa. Super. Ct. 1996) (quotations omitted).

Moreover, once the existence of a contract has been found, the Pennsylvania Supreme Court has held that every contract for legal services contains, as an implied term of the contract, a promise by the attorney to render legal services in accordance with the profession at large. Bailey v. Tucker, 621 A.2d 108, 115 (Pa. 1993).  "Thus, when an attorney enters into a contract to provide legal services, there automatically arises a contractual duty on the part of the attorney to render those legal services in a manner that comports with the profession at large."  Gorski, 812 A.2d at 694.  "Hence, a breach of contract claim may properly be premised on an attorney's failure to fulfill his or her contractual duty to provide the agreed upon legal services in a manner consistent with the profession at large."  Id.

Finally, as to the resultant damages element, unlike malpractice claims based in tort, damages for such claims based in contract are "limited to the amount actually paid for the services plus statutory interest."  Bailey, 621 A.2d at 115; see also Stacey v. City of Hermitage, No. Civ.A.02-1911, 2008 WL 941642, at *7 n.6 (W.D. Pa. Apr. 7, 2008) ("Assuming, arguendo,

that the assumpsit claim recognized in <u>Bailey</u> applies in the civil context, the Amended

Complaint fails to state a claim because damages under such a claim are limited to the amount

paid."); <u>Green v. Altman</u>, No. Civ.A.03-6437, 2004 WL 2106552, at *7 (E.D. Pa. Sept. 21,

2004) (same); <u>McClanaghan v. McGreal</u>, No. Civ.A.92-5745, 1993 WL 427374, at *2 (E.D. Pa.

Oct. 21, 1993) (finding, in legal malpractice action in civil context, that damages are limited to

amount paid for services plus statutory interest); <u>Coleman v. Duane Morris, LLP</u>, No.

Civ.A.0917, 2011 WL 5838278, at *1 (Pa. Com. Pl. Nov. 4, 2011) (applying <u>Bailey</u> to breach of

attorney-client agreement in a civil action).

   In the present case, the Amended Complaint specifically alleges that Plaintiff and

Defendant Thompson "entered into a contract for legal services" in late December 2008.  (Am.

Compl. ¶¶ 19, 60.)  As to Defendant Galloway, the Amended Complaint indicates that after

Thompson's withdrawal, "Plaintiff retained Defendant, Galloway in March 2009."  (<u>Id.</u> ¶ 42.)

The retainer was specifically for "Galloway to move for reconsideration and/or appeal of the

contempt order."  (<u>Id.</u> ¶ 43.)  The Amended Complaint goes on to assert that the aforementioned

conduct by both Defendants—discussed in detail under the professional negligence section of

this Memorandum—constitutes "a breach of that agreement to provide competent and effective

legal services, as well as a breach of the covenant of good faith and fair dealing."  (<u>Id.</u> ¶ 61.)

Finally, Plaintiff states that as a direct and proximate cause of the foregoing, he has suffered the

same damages as indicated above.  (<u>Id.</u> ¶ 62.)  While such pleading is somewhat sparse and

boilerplate, it is bolstered by the numerous factual allegations set forth with respect to the

professional negligence claim and incorporated into the breach of contract cause of action.

   Plaintiff's breach of contract actions, however, falter on the element of damages.  The

Amended Complaint contains only a bare averment that Defendants Thompson and Galloway were retained, without any explanation of the financial terms of the engagements.  There is no averment that Plaintiff ever paid Defendants any money to perform.  Absent such allegations, Plaintiff has not adequately pled an action for breach of contract and, thus, these claims must be dismissed.

### C.      Breach of Fiduciary Duty Claim

The next claim at issue is Plaintiff's breach of fiduciary duty claim.  Pennsylvania common law imposes on attorneys the status of fiduciaries vis-à-vis their clients; that is, attorneys are bound, at law, to perform their fiduciary duties properly. Maritrans GP Inc. v. Pepper, Hamilton & Scheetz, 602 A.2d 1277, 1283 (Pa. 1992).  "[S]uch duty demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest."  Id.  In the context of Pennsylvania legal malpractice, breach of fiduciary duty "has often been understood by courts to describe a claim for breach of an attorney's duty of loyalty, rather than an attorney's duty of care."  Bayview Loan Servicing, LLC v. Law Firm of Richard M. Squire & Assoc., LLC, No. Civ.A.10-1451, 2010 WL 5122003, at *4 (E.D. Pa. Dec. 14, 2010).  Pennsylvania courts further define this fiduciary duty as "trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other." Basile v. H & R Block, Inc., 777 A.2d 95, 101 (Pa. Super. Ct. 2001) (quoting In re Estate of Scott, 316 A.2d 883, 885 (Pa. 1974)).  Establishing a breach of fiduciary duty requires plaintiff to prove: "'(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit . . . was a real factor in bring[ing] about plaintiff's

injuries.'"  Bayview, 2010 WL 5122003, at *4 (quoting Meyers v. Sudfeld, No. Civ.A.05-2970,

2006 WL 401855 (E.D. Pa. Feb. 21, 2006)) (further quotations omitted).

Plaintiff's breach of fiduciary duty count is, at best, sparse.  After incorporating the

preceding portions of the Amended Complaint, Plaintiff states only the following:

> 64.     Plaintiff and Defendants were in a fiduciary, attorney-client relationship.

> 65.     Defendants' aforementioned conduct constitutes a breach of that fiduciary
>         relationship.

> 66.     As a direct and proximate cause of the aforementioned breach of fiduciary
>         duty, Plaintiff has been damaged (as set forth above).

(Am. Compl. ¶¶ 64–66.)  These bare allegations do little to explain how exactly Defendants

breached a duty of loyalty to Plaintiff beyond what is required to establish a professional

negligence claim.  See Jackson v. Ferrera, No. Civ.A.01-5365, 2002 WL 32348328, at *1 (E.D.

Pa. Apr. 16, 2002) ("Plaintiffs' second claim for breach of fiduciary duty cannot be maintained

because it does not allege facts supporting an inference of disloyalty.  Even if Defendants acted

negligently, the Amended Complaint provides no indication that they acted without integrity,

good faith, or undivided loyalty.").  Moreover, in the face of Defendants' dual Motions to

Dismiss this claim, Plaintiff offers no response whatsoever.  Because the allegations fail to raise

the right to relief on this claim above the speculative level, both Defendants' Motion to Dismiss

this cause of action shall be granted.

### D.     Civil Rights Claim

Plaintiff's next cause of action alleges malicious prosecution, under 42 U.S.C. § 1983,

against only Defendant Thompson.  Section 1983, while not a source of substantive rights, serves as a means of redress for violations of federal rights under color of state law.  Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).  "[A] plaintiff seeking to hold an individual liable under § 1983 must establish that she was deprived of a federal constitutional or statutory right by a state actor."  Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009).  A private party may be considered a state actor where there is a sufficient nexus between the state and the challenged action.  Id.  For purposes of Section 1983 liability, a private party will be treated as a state actor if any of the following tests are met: (1) "the private entity . . . exercised powers that are traditionally the exclusive prerogative of the state"; (2) "the private party . . . acted with the help of or in concert with state officials"; or (3) "the state has so far insinuated itself in a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." Id. (internal quotations omitted).

The allegations of the Amended Complaint in support of this claim state as follows:

67.    Though ordinarily a private action, Thompson acted under color of law and state authority when she supplied attorney-client privileged information and/or caused McShea to coordinate the initiation of the warrant, arrest, charges and criminal proceedings against Plaintiff resulting in his incarceration (which charges were ultimately dismissed in Plaintiff's favor).

68.    The proceeding(s) was without probable cause, and Thompson acted maliciously or for a purpose other than bringing Plaintiff to justice wherein she caused McShea to effectuate that process as a mechanism to conceal Thompson's above misconduct (incorporated by reference).

69.    As a result, Plaintiff suffered a deprivation of liberty.

70.    As a further result, Plaintiff suffered McShea's pattern of unlawful searches and seizures above discussed.

71.     Thompson is a state actor liable for her [sic] through McShea's intended constitutional violations per 42 U.S.C. § 1983, et seq.

72.     Simply, McShea had a pre-arranged plan with Thompson whereby Thompson caused the substitution of her judgment for McShea's official authority.

73.     As a result of that pre-arranged plan, McShea instituted or caused to be instituted criminal proceedings upon Thompson's directive without McShea independently evaluating the presence of probable cause.

(Am. Compl. ¶¶ 67–73.)  Notably absent from this cause of action is any suggestion that Defendant Thompson lied about anything relevant to the police's decision to initiate the warrant, arrest, charges and criminal proceedings against Plaintiff. While using boilerplate legal terminology that Thompson caused the substitution of her judgment for McShea's official authority, such allegations fail to meet Plaintiff's burden of pleading sufficient facts to support an inference that Thompson acted with the help of or in concert with state officials.[12]  Accordingly, this claim must be dismissed.

E.     **Statute of Limitations**

In a last-ditch effort to obtain dismissal of the entire action against her, Defendant

_____

[12]  Plaintiff cites the case of Dickerson v. DeSimone Auto Grp., Inc., No. Civ.A.09-1551, 2009 WL 2394147 (E.D. Pa. Aug. 4, 2009), aff'd in part vacated in part, 400 F. App'x 636 (3d Cir. 2010), for the proposition that "[i]f a person knowingly provides false information to the police . . . then 'an intelligent exercise of the officer's discretion becomes impossible' and the private party may be liable." Id. (citations omitted).  Plaintiff, however, fails to note that this principle applies to a common law claim of malicious prosecution against a private actor.  It does not speak to when a private actor is deemed to be acting under color of state law for purposes of a Section 1983 claim alleging a violation of the Fourth and Fourteenth Amendments.  Stated differently, a state law claim of malicious prosecution by a private actor—a claim not set forth in the Amended Complaint—and a Section 1983 claim against a private actor for malicious prosecution—the basis for Count IV of the Amended Complaint—are entirely distinct claims. Accordingly, Dickerson is inapposite for purposes of this case.

Thompson argues that the Amended Complaint is barred by the statute of limitations.  Her argument, however, discusses only the limitations period for the professional malpractice action. Accordingly, the Court limits its analysis to that claim.

The Federal Rules of Civil Procedure indicate that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion, but "an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994).  This "Third Circuit Rule" explains that where the face of the pleadings does not unequivocally reveal whether a cause of action has been commenced within the limitations period, the Court may not dismiss the claim on a Rule 12 motion.  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002); see also Jaramillo v. Experian Info. Solutions, Inc., 155 F. Supp. 2d 356, 358–59 (E.D. Pa. 2001) (holding that for a Rule 12 dismissal of a claim as time-barred, noncompliance with limitations period must clearly appear on the face of the pleading).

In Pennsylvania, a two-year statute of limitations applies to a professional negligence action.  42 Pa. Cons. Stat. § 5524; Wachovia Bank, N.A. v. Ferretti, 935 A.2d 565, 571 (Pa. Super. Ct. 2007).  Pennsylvania law further provides that:

> [T]he occurrence rule is used to determine when the statute of limitations begins to run in a legal malpractice action.  Under the occurrence rule, the statutory period commences upon the happening of an alleged breach of duty. . . .  An exception to this rule is the equitable discovery rule which will be applied when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause. . . . Lack of knowledge, mistake, or misunderstanding, will not toll the running of the statute.

Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger, 674 A.2d 244, 246–47 (Pa.

Super. Ct. 2006).

Defendant Thompson argues that Plaintiff's professional negligence claim against her is

founded on an alleged breach of her duties on December 25, 2008, or, at the latest, when her

representation of him ended on January 15, 2009.  As set forth in detail above, however, Plaintiff

sets forth multiple allegations of malpractice occurring during the February 23, 2009 contempt

hearing.  (Am. Compl. ¶¶ 25–28.)  Moreover, Plaintiff alleges that he was not aware that

Defendant Thompson had failed to accurately advise him of his termination of his parental rights

until after late March 2009.  (Id. ¶¶ 32–35.)  The reasonable inferences from such allegations is

that Plaintiff was unable to know of the injury resulting from Defendant Thompson's purported

malpractice until, at the earliest, the end of March 2009.  As he initiated the present action on

March 24, 2011, his Complaint could potentially have been filed within the limitations period.

The Court acknowledges that portions of Plaintiff's professional negligence claim against

Thompson may, in fact, be time-barred.  Under the Third Circuit Rule, however, where the face

of the pleadings does not unequivocally reveal noncompliance with the limitations period, the

Court may not grant the Motion to Dismiss on this ground.

## IV.     CONCLUSION AND LEAVE TO AMEND

In sum, the Court finds that Plaintiff's claims for professional negligence against both

Defendants survive Rule 12(b)(6) scrutiny.  While Plaintiff's malpractice assertions rest on

somewhat tenuous grounds, the failure of Defendants to accurately and thoroughly detail a clear

legal basis for dismissing these claims precludes the Court from granting relief in their favor.

Plaintiff's ancillary claims for breach of contract, breach of fiduciary duty, and civil rights violations, however, are nothing more than threadbare recitals of the elements supported by mere conclusory statements.  Accordingly, the Motions to Dismiss will be denied as to Count I of the Amended Complaint, but granted as to Counts II, III, and IV.

Nonetheless, it is well-established that if a complaint is subject to Rule 12(b)(6) dismissal, a district court must ordinarily permit a curative amendment unless such an amendment would be inequitable or futile.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Dismissal without leave to amend is justified only on grounds of bad faith, undue delay, prejudice, and futility.  Id. at 236.  This opportunity to amend must be offered, even if the plaintiff does not specifically make such a request.  Id. at 235.

Plaintiff, in this case, specifically requests leave to amend to cure any pleading deficiencies.  Defendants, in turn, offer no response and, as such, set forth no bases on which the Court could find any of the above grounds for denial.  Given this liberal amendment standard and absent any of the aforementioned bases for denying leave, the Court grants Plaintiff twenty days to file a Second Amended Complaint in an effort to set forth a proper damages allegation in support of his breach of contract action, replead his breach of fiduciary cause of action, and properly allege that Defendant Thompson acted under color of state law for purposes of the Section 1983 claim.  His failure or inability to do so will, upon proper motion by Defendants, result in dismissal of these claims with prejudice.